[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12291
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-01489-JEO

JOSEPH BLACK,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 27, 2019)

Before WILSON, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Joseph Black appeals the district court's affirmance of the decision of the

Commissioner of the Social Security Administration (Commissioner) denying his

application for Social Security Income (SSI).  He argues that the Administrative

Law Judge (ALJ) improperly discounted the opinion of treating physician Dr. Richard Grant without good cause. He then argues that the ALJ also improperly discounted the opinion of Dr. Robert Storjohann because the ALJ substituted his own opinion for a medical expert. Black also argues that the Appeals Council improperly denied review of the ALJ's decision by refusing to review and consider new and chronologically relevant evidence consisting of a psychological evaluation from Dr. David Wilson. Furthermore, Black argues that the district court erred by denying his request for a sentence-four remand because the Appeals Council refused to consider Dr. Wilson's evaluation. Finally, Black argues that the district court erred by affirming the ALJ's decision based on post hoc rationalizations. We affirm on all issues.

## I.

### A. Personal History

Joseph Black applied for SSI on January 16, 2013, alleging that his disability began as of November 24, 2010. His initial interview revealed that he had previously filed a disability insurance benefits claim, which the Appeals Council denied in July 2011. Black reported that he was depressed and bipolar and had high cholesterol, short term memory issues, and chronic obstructive pulmonary disease (COPD). While he had stopped working by December 1, 2011, Black believed that his conditions were severe enough to have prevented him from

2

working since November 24, 2010.  He reported that the highest grade of school he completed was eighth grade.  He indicated that he was not currently taking any medications.  He reported that, from 1992 to 2009, he worked various positions in general labor and temporary services and in December 2011, he worked in a production manufacturing position.  Black also reported that in these temporary jobs he had to walk, stand, sit, climb, stoop, kneel, crouch, crawl, and handle big objects.  Black submitted a function report containing details about his current work, health, and functioning.

### B. Medical Records

Black saw Dr. Carol James at Quality of Life Health Services in April 2008.  Dr. James indicated that Black had chronic conditions of bipolar disorder, high cholesterol, and depression.  Black then started going to Cherokee Etowah Dekalb Mental Health Center (CED) in January 2008, where he was initially assigned a Global Assessment of Functioning (GAF) score of 58.[1]  Black was treated at CED for depression and bipolar disorder from February 2008 to 2011.  His treatment consisted of medication and individual and group therapy.  The assigned therapists varied from visit to visit.

---

[1] The GAF score was later discussed in the ALJ's decision.  The GAF rating is used to assess disability claims involving mental disorders, reporting a "clinician's judgment of a person's ability to function in daily life."  The rating also "reflects the clinician's subjective judgment about the person's symptom severity and psychological, social, and occupational functioning."

On January 23, 2009, Jack Bentley, Ph.D., produced a mental examination report of Black finding that Black had a history of high cholesterol, chronic knee pain, short-term memory loss, anxiety, and depression. Black had been taking three different types of medication from CED, which he had to stop taking two months prior because he failed to appear at his last appointment. Black showed no evidence of phobias, obsessions, or unusual behaviors and did not appear to be noticeably anxious. Dr. Bentley estimated that Black's cognitive functioning was borderline to mild mental retardation and diagnosed Black as having a personality disorder with antisocial features, auditory hallucinations suggestive of a psychotic disorder, dysthymia, and poor impulse control.

Black also visited Dr. James at J.W. Stewart Neighborhood medical center on May 8, 2009. Dr. James noted that Black smoked two packs of cigarettes a day but had no cough or audible wheeze, and no other bone or joint pain or weaknesses. A few weeks later, Black saw Dr. James again, complaining of coughing and wheezing, and feeling short of breath. Dr. James reported that Black's extremities appeared normal, and he was alert and oriented and had no unusual anxiety or evidence of depression. She continued Black's prescription for Zyprexa and prescribed some medication to help with his cough and wheezing. In June 2010, Black visited Dr. James again—he did not report that he was in any pain and was not under any apparent distress.

4

Dr. Robert Storjohann, a consulting psychologist, performed a psychological evaluation on July 28, 2010.  Black indicated he had anger problems, was impulsive, overactive and inattentive, and had problems with attention and concentration.  He reported a history of suicidal ideation and unstable interpersonal relationships, and shared that he experienced depression, anxiety, and worry since he was 11 or 12 years old.  Black indicated he felt less angry, suspicious, and depressed when he was taking psychotropic medication and experienced less frequent mood swings.  Dr. Storjohann reported that Black appeared severely depressed, intensely anxious, and tense.

Dr. Storjohann concluded that, due to the severity of his psychiatric difficulties, Black was unable to make acceptable work-related decisions in a consistent or reliable manner and was unable to manage his own finances.  He concluded that Black's level of intellectual functioning was in the borderline range and assigned him a GAF score of 42.  He diagnosed Black with bipolar disorder, generalized anxiety, social phobia, attention deficit hyperactivity disorder (ADHD), paranoid personality disorder, asthma, emphysema, chronic knee pain, dental problems, and elevated cholesterol.  Finally, Dr. Storjohann concluded that Black appeared to have "marked deficits in his ability to understand, carry out, and remember instructions in a work setting," as well as "marked to extreme deficits in

5

his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting."

Black returned to Dr. James at J.W. Stewart Neighborhood Clinic in August 2012, reporting that he stopped going to CED because his treating physician "would not listen" to him.

On April 30, 2013, Dr. June Nichols conducted a psychological evaluation of Black. Black said that he stopped going to CED because a doctor there had prescribed a medication—Seroquel—that kept waking him up at night. Black indicated that medications were not extremely beneficial, but some had helped to stabilize him. He appeared to be functioning in the average range of intellectual ability. Dr. Nichols diagnosed Black with PTSD, panic disorder without agoraphobia, major depressive disorder, COPD, high cholesterol, poor social adjustment, and isolation. Dr. Nichols determined that his depression and anxiety would interfere with his ability to remember and carry out work-related instructions, but he would be able to handle his own funds and live independently. She determined that it was too early to tell whether the treatment he received at CED would provide the improvement he needed. Finally, Dr. Nichols assigned Black a GAF score of 40.

Dr. Richard Grant, the medical director at CED, signed one therapy session evaluation on February 3, 2014. The evaluation indicated that Black presented

with "fair" insight and judgment, "logical" thought processes, "appropriate" behavior, and a "low" risk. It also indicated that Black had "inadequate" attention and concentration and "poor" appetite, energy, and motivation. In a therapy session note from June 24, 2014, Black indicated that he was doing "pretty good" and had been "working some," even though he kept forgetting to take his medication. On November 17, 2014, Dr. Grant signed a Mental Health Source Statement stating that Black could understand and carry out very short or simple instructions but could not maintain attention, concentration, or pace for periods of at least two hours, could not perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances, could not sustain an ordinary routine without special supervision, could not accept instructions or respond appropriately to criticism from supervisors, and could not maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness. Dr. Grant indicated that Black's limitations existed as of November 24, 2010, and that lethargy was a side effect of his medications.

## C. ALJ Hearing

Black's SSI application was denied on May 24, 2013. He then requested a hearing before an ALJ. At the hearing on September 26, 2014, Black testified that he was prevented from working due to his COPD, emphysema, bad right elbow, and bad knees. He was also being treated for bipolar disorder, post-traumatic

7

stress disorder (PTSD), and depression, which caused irregular sleep, inability to concentrate, and forgetfulness.  Black was supposed to take medications to help with his conditions; he indicated on his SSI application that he was currently not taking the medications because he had a hard time remembering, but that his girlfriend would help him remember.  Black stated that medication did help but was not a complete fix.  Black further testified that he had dropped out of school early because his parents were not supporting him, and he and his two brothers were being sexually molested.  He said that when he left school, he was not struggling and was making "pretty good grades."

A vocational expert (VE) testified that Black previously worked in heavy unskilled work as a commercial cleaner, medium unskilled work as a kitchen helper, medium skilled work as an auto mechanic, and light semi-skilled work as a chauffeur.  The VE testified that Black could not perform any of those past jobs with his current limitations, but that he could perform the work of a production assembler or packing line worker, which had classifications of light, unskilled work.  The VE testified, however, that absenteeism would not be tolerated in these jobs.  The ALJ asked the VE whether, if he were to find Black's subjective testimony credible and supported by the record, there would be any jobs that Black could perform.  The VE responded that there were not.

8

The ALJ issued a decision, determining that Black was not disabled since January 3, 2013—the date he filed his SSI application.  The ALJ held that the record did not support a finding of "borderline intellectual functioning or less intellectual ability," despite the psychological evaluations of Dr. Storjohann.  The ALJ determined that Black's impairments did not meet the severity of the impairments listed in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926 because Black only had moderate restrictions in daily living, social functioning, concentration, persistence, or pace, and had experienced no episodes of decompensation.  The ALJ discussed Black's function report, noting that Black indicated he had no problems with his personal care, was able to prepare some food, was able to do some household chores, went outside three to four times a week, could go out alone, was able to drive, and could pay bills and count change.

The ALJ stated that Black's hearing testimony regarding his mental health symptoms was "vague and unpersuasive."  He noted that Black testified that he slept excessively but could stay awake for one to two days at a time, that he started but did not finish projects, struggled with anger, did not like to be around a lot of people, and had panic attacks.  The ALJ also noted that Black testified that he was on medications for his symptoms, that his girlfriend helped him take them, and that they helped alleviate his symptoms when he took them.

9

The ALJ stated that Black's GAF score indicated that he had moderate to moderately severe symptoms. The ALJ noted that the GAF rating served as opinion evidence, which could be relied upon when it was consistent with other evidence, how familiar the rater was with the claimant, and the rater's expertise. Accordingly, the ALJ afforded substantial weight to Black's GAF ratings from CED, which were in the moderate range, because they were consistent with the record as a whole.

The ALJ acknowledged that Black submitted a Mental Health Source Statement by Dr. Grant without supporting documentation or indication as to Black's relationship with Dr. Grant. It was unclear how many times Dr. Grant evaluated Black because, while it appeared that Dr. Grant was one of Black's treating psychiatrists at CED, Black's individual therapy sessions appeared to be with social workers and the treatment notes were unsigned. The ALJ determined that the nature and extent of this treating relationship was not clear, and Dr. Grant's opinion was not consistent with or supported by the record, which only reflected primarily moderate symptoms and limitations. Thus, the ALJ afforded little weight to Dr. Grant's opinion regarding Black's abilities.

The ALJ afforded only "limited weight" to Dr. Storjohann's psychological evaluation, finding it to be not consistent with the record. The ALJ noted that Black acknowledged that his symptoms improved with medication, so Dr.

Storjohann's opinion—evaluating Black while he was not taking his medication—was not consistent with the treatment record. The ALJ also noted that Dr. Storjohann's GAF score of 42 was inconsistent with the record and he was not a treating physician.

The ALJ determined that Black had the residual functional capacity (RFC) to perform light work, except that: he could occasionally climb ladders, ropes, or scaffolds, would be precluded from extreme temperatures, hazardous conditions, and pulmonary irritants, was limited to the performance of repetitive tasks, to work that required little to no judgment and required no more than simple work-related decision, to occasional and casual interaction with the public and other employees, and to work that dealt primarily with things as opposed to people. The ALJ followed a two-step evaluation in which he first determined that Black's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. The ALJ, however, also found that Black's statements concerning the "intensity, persistence, and limiting effects of these symptoms" were not entirely credible. Specifically, the ALJ found inconsistencies related to Black's statements about his mental health symptoms corresponding to his history of noncompliance with psychotropic medications which he reported helped control his symptoms. Second, the ALJ determined that, although the evidence established medical conditions capable of producing pain, substantial evidence did not support

11

a conclusion that the objectively-determined medical conditions were so severe that they could reasonably be expected to cause the disabling pain or other limitations as Black described.  The ALJ noted that Black's inconsistent statements, medical noncompliance, and vague and unpersuasive hearing testimony all undermined his credibility and suggested that he was exaggerating his symptoms and limitations for disability purposes.

The ALJ concluded, based on the VE's testimony, that Black was unable to perform any past relevant work, but could successfully adjust to other work that fit under the category of "representative light unskilled occupations."  Accordingly, the ALJ concluded that Black had not been under a disability since the date he filed his SSI application.  The ALJ attached the list of exhibits that he considered when making the determination.

### D. Appeals Council Review

Black requested Appeals Council review on April 30, 2015, arguing that the ALJ's decision was not supported by substantial evidence.  He submitted to the Appeals Council a supplemental brief to the Appeals Council.  This brief contained the results from a new psychological evaluation by Dr. David Wilson, which was performed on August 13, 2015.  The evaluation indicated that Black had a full scale IQ of 70 and was in the borderline range of intellectual functioning, with deficits in all areas especially working memory and processing speed.  Dr. Wilson

gave Black a GAF score of 40 and indicated that Black could not understand or carry out short or simple instructions, could not maintain attention, concentration, or pace for periods of at least two hours, could not perform activities within a schedule or be punctual, could not sustain an ordinary routine without constant supervision, could not respond appropriately to criticism, and that his limitations existed as of January 3, 2013.  Black also claimed to submit new evidence of CED medical records from August 2014, which included therapy notes from three different therapists.  The notes summarized that Black was still exhibiting symptoms of depression and anger but was feeling good and had discussed coping skills with one of the therapists.  Black argued that this new and material evidence showed that he met the criteria for presumptive disability under Listing 12.05(C) and (D), as it demonstrated that he had the requisite IQ and evidence of other impairments that would impose an additional work-related functional limitation.

The Appeals Council denied Black's request for review, stating that it "found no reason under [its] rules to review the [ALJ's] decision."  The Council wrote that it considered the reasons Black provided for why the ALJ's decision was wrong, "and the additional evidence listed on the enclosed Order of Appeals Council," but it did not find that the information provided a basis for changing it. The attached "Order of Appeals Council" listed Black's brief that he submitted to the Appeals Council for review.

### E. Federal Court Proceedings

Black then filed a complaint in district court, raising five issues for review: (1) the Appeals Council improperly refused to consider Dr. Wilson's psychological evaluation because it was dated after the date of the ALJ's decision; (2) the ALJ failed to give proper weight to the opinion testimony of Dr. Grant, a treating psychiatrist; (3) the ALJ improperly substituted his own opinion for that of Dr. Storjohann, an examining psychologist; (4) the ALJ failed to state adequate reasons for finding him not credible; and (5) the ALJ failed to assess the intensity and persistence of his symptoms pursuant to Social Security Ruling (SSR) 16-3p.

Black later moved for a sentence-four remand. He argued that remand was appropriate because the Appeals Council improperly refused to consider the new evidence from Dr. Wilson. Black argued that the Appeals Council denied review of the new evidence because it related to a later time, but that this decision constituted legal error because the new evidence was chronologically relevant as it helped to shed light on his condition as it existed during the relevant time period. [2] Black attached the psychological evaluation performed by Dr. Wilson on August 13, 2015.

---

[2] Black argued that, even though the ALJ's decision on October 11, 2013, was four months before Dr. Wilson's psychological evaluation, Dr. Wilson found that Black's mental limitations existed since November 1, 2010. Moreover, Black argued that Dr. Wilson based this evaluation on medical records going back to 2010.

14

The Commissioner responded, arguing that Black failed to show that the new evidence would provide a basis for changing the ALJ's decision or that it otherwise diminished the substantial evidence in the record that supported the ALJ's decision. Both parties subsequently gave consent to jurisdiction by a magistrate judge to conduct further proceedings in the case and enter final judgment. The magistrate judge affirmed the ALJ's decision and denied Black's motion to remand. The magistrate judge determined the following: (1) based on the Appeals Council's inclusion of the brief that summarized Dr. Wilson's report in the record, it properly considered the evaluation in reviewing the ALJ's decision and substantial evidence supported a finding that Black's limitations did not meet the criteria for eligibility of benefits; (2) the ALJ provided good reasons for affording Dr. Grant's opinions little to no weight, which were supported by the record showing Black's negligence with regard to taking his medications and responding to treatment and Dr. Grant's minimal involvement in Black's treatment at CED; (3) substantial evidence supported the ALJ's decision to give Dr. Storjohann's opinion limited weight; (4) substantial evidence supported the ALJ's decision to discredit Black's testimony regarding the intensity, persistence, and limiting effects of his symptoms; and (5) SSR 16-3p did not provide a basis for remand here because it only applied prospectively and not to prior matters. The magistrate judge also denied Black's motion for remand under sentence four

15

because the Appeals Council had adequately considered Dr. Wilson's psychological evaluation.

## II.

An ALJ considers many factors when weighing medical evidence, including whether an opinion is well-supported and consistent with the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ will further consider factors such as whether the physician examined or treated the claimant, and the length, frequency, and nature of the treatment relationship. 20 C.F.R. § 404.1527(c). The ALJ must give a treating physician's opinion substantial or considerable weight unless there is good cause to disregard the opinion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (internal quotation marks omitted). When disregarding a treating physician's opinion, the ALJ must clearly articulate the reasons for doing so. *Id.* A preference also exists for the opinions of treating physicians over consultative examinations or brief hospitalizations. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Nevertheless, a treating physician's report can be discounted if "it is not accompanied by objective medical

16

evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (internal quotation marks omitted).

The ALJ in the present case considered Black's medical reports from various treating physicians at a range of medical institutions. The ALJ assigned weight to each report based on the totality of evidence in the record with respect to Black's medical history—including evaluations from other physicians and Black's own testimony. The ALJ properly gave little weight to the opinion of Black's treating physician, Dr. Grant, because good cause existed to discount his opinions. The true nature of the treatment relationship between Dr. Grant and Black was vague and unsupported by the record.[3] Moreover, the ALJ's decision was supported by substantial evidence because Dr. Grant's opinions lacked explanations and were not entirely consistent with his own notes or other evidence in the record.

Similarly, the ALJ properly gave limited weight to Dr. Storjohann's opinion that Black had marked deficits in functional capabilities, as this opinion was not consistent with the totality of the record.[4] The ALJ noted that Black's treatment record showed a history of prescriptions for psychotropic medication that

---

[3] The Mental Health Source Statement that contained Dr. Grant's opinion was submitted among CED medical records, which included treatment and therapy session notes starting from 2008 signed by numerous other therapists besides Dr. Grant. Dr. Grant signed one treatment note in February 2014, prior to the Mental Health Source Statement.

[4] Dr. Storjohann's report was not entirely consistent with Black's own testimony regarding his performance in school, nor with other treatment notes from that same year. Dr. Storjohann gave Black a GAF score (42) that was lower than Black's average GAF score from CED (between 50 and 60).

improved Black's symptoms. At the time that Black saw Dr. Storjohann, he had

not been taking these medications. Moreover, Dr. Storjohann was not a treating

physician. Thus, the ALJ properly considered factors in weighing the medical

evidence from Dr. Storjohann's evaluation.

### III.

We review de novo the legal principles upon which an ALJ based his

decision; we review the resulting decision "only to determine whether it is

supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th

Cir. 2005) (per curiam). Substantial evidence is "less than a preponderance, but

rather such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Id.*

A claimant may present new evidence at each stage of the administrative

process that determines his social security or disability benefits. *See* 20 C.F.R.

§ 404.900(b); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th

Cir. 2018). "If a claimant presents evidence after the ALJ's decision, the Appeals

Council must consider it if it is new, material, and chronologically relevant." *Id.* at

1309. As we have previously stated,

> [e]vidence is material if a reasonable probability exists
> that the evidence would change the administrative result.
> New evidence is chronologically relevant if it "relates to
> the period on or before the date of the [ALJ's] hearing
> decision." The Appeals Counsel must grant petition for
> review if the ALJ's "action, findings, or conclusion is

18

contrary to the weight of the evidence," including the new evidence.

*Id.* (internal citations and quotation marks omitted). While the Appeals Council has discretion not to review the ALJ's denial of benefits, it must still consider any new and material evidence in its decision to review. 20 C.F.R. §§ 404.967, 404.970(b); *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

Merely acknowledging that the claimant submitted new evidence is not sufficient, as the Appeals Council must "adequately evaluate" that evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014) (internal quotation marks omitted) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)). "Adequate evaluation," however, does not require that the Appeals Council provide a detailed discussion of a claimant's new evidence when denying a request for review. *Id.* In *Mitchell*, for example, the Appeals Council explained "that it had considered Mitchell's reasons for disagreeing with the ALJ's decision as well as his additional evidence" but stated—without a discussion of the evidence itself—that "the information did not provide a basis for changing the ALJ's decision." *Id.* at 782.

At the time of the Appeals Council's decision in Black's case, Listing 12.00 in 20 C.F.R. Part 404, Subpart P, Appendix 1 described the requirements for claiming mental disorders. Listing 12.00 stated that an individual claiming intellectual disability must have, among other things, an impairment meeting the

19

diagnostic description in the introductory paragraph of the relevant Listing.  The diagnostic description for intellectual disabilities in Listing 12.05 was a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22.  Beyond meeting the diagnostic description of Listing 12.05, a claimant also had to meet the requirements of sections A, B, C, or D of Listing 12.05.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05 (2016).  The requirements of Listing 12.05(C) were: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* § 12.05(C).  A qualifying IQ score can create a rebuttable presumption that the claimant has manifested deficits in adaptive functioning prior to age 22; the Commissioner can rebut this presumption with evidence relating to a claimant's daily activities and behavior.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

Black argues that new evidence—Dr. Wilson's evaluation—raised an issue of eligibility under the presumptive disability criteria of Listing 12.05(C), which required that a claimant present with a valid score IQ score of 60 to 70, inclusive, along with evidence of additional mental or physical impairments.  Black argues that he satisfied these criteria because Dr. Wilson scored his IQ at 70 and he suffered from "bipolar disorder with agoraphobia/psychosis, posttraumatic stress

20

disorder, severe depression with suicidal ideation, auditory hallucinations, panic

disorder with panic attacks, attention deficit disorder, chronic obstructive

pulmonary disorder, shortness of breath, severe knee pain, hyperlipidemia, and

insomnia."  The ALJ had previously determined, based on substantial evidence in

the record, that Black did not qualify under Listing 12.05.

The Appeals Council stated that it considered the new evidence submitted by

Black, which included the findings from the psychological evaluation by Dr.

Wilson performed after the ALJ's decision.  The Appeals Council, however, found

that the information did not provide a basis for changing the ALJ's decision.[5]  The

Appeals Council was not required to provide a more in-depth explanation of its

decision to deny review.  *See Mitchell*, 771 F.3d at 782.  Therefore, the Appeals

Council properly denied review of the ALJ's decision to deny Black SSI benefits.

**IV.**

We review de novo a district court's determination whether remand is

necessary based on new evidence.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214,

---

[5] For example, the low IQ score assigned by Dr. Wilson was inconsistent with the evidence that Black left school in the eighth grade for family reasons rather than mental health issues and that, before he left, he did well and had fairly good grades.  This, along with the evidence regarding Black's daily life and activities, undermined the presumption that Black suffered from intellectual disability as required by Listing 12.05(C).  Black's function report indicated that he had no issues with personal care, did not need special reminders to take care of his personal needs, was able to prepare some food, did some household chores, went outside alone several times a week, was able to drive and grocery shop and handle money.  Moreover, the ALJ had determined that Black's average GAF scores did not constitute evidence of a physical or other mental impairment that imposed a significant work-related limitation of function.

21

1218 (11th Cir. 2001).  A district court is permitted to remand an application for benefits to the Commissioner by sentence four or sentence six of 42 U.S.C. § 405(g); each sentence "remedies a separate problem."  *Ingram v Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The fourth sentence of § 405(g) gives the federal court the power to affirm, modify, or reverse the decision of the Commissioner if it finds that the ALJ's decision is not supported by substantial evidence, or that the Commissioner or ALJ applied relevant law incorrectly.  *Jackson v. Chater*, 99 F.3d 1086, 1091–92 (11th Cir. 1996).  The sixth sentence of § 405(g) provides the district court with the power to remand a benefits application to the Commissioner for the taking of additional evidence only when the claimant has shown that there is new, material evidence for which he had good cause for his failure to present.  *Id.* at 1092.  Remand is appropriate under sentence four when the Appeals Council did not adequately consider the additional evidence and is appropriate under sentence six when the evidence has been submitted to the federal court for the first time.  *Ingram*, 496 F.3d at 1268.

Black argues that the district court improperly denied his request for a sentence-four remand because the Appeals Council erred in refusing to consider newly presented evidence—that is, the psychological evaluation from Dr. Wilson.  The Appeals Council did not err.  As we have previously noted, the Appeals Council stated that it considered the new evidence submitted by Black and was not

22

required to provide a more in-depth explanation of its decision to deny review. The ALJ's decision did not lack substantial evidence, nor did the ALJ apply relevant law incorrectly. Thus, the district court did not err in denying Black's request for a sentence-four remand.

## V.

An appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Black makes conclusory statements that the district court relied on post hoc rationalizations to affirm the ALJ's decision, but he does not provide facts to support these conclusions. Black may be attempting to argue that the district court incorrectly determined that the Appeals Council considered Dr. Wilson's report even though the report was omitted. Black, however, is incorrect here—the details of the report were included in the record before the Appeals Council, and thus it was properly considered. Black does not provide any other evidence of rationalizations that the district court improperly used, and thus he has abandoned any argument regarding the district court's reliance on post hoc rationalizations because he failed to adequately present his argument on appeal. Accordingly, we affirm the district court's decision.

23

## VI.

We affirm the district court's decision with respect to all issues raised in this case. The ALJ, in considering the entirety of the record, gave little weight to the opinions of Drs. Grant and Storjohann; as the ALJ noted, the evaluations from these doctors were inconsistent with the record as a whole. The ALJ properly exercised its discretion to make this determination. The Appeals Council considered new evidence from Black regarding his mental status but properly determined—in light of all of the evidence in the record—that the new evidence did not provide a basis to change the ALJ's decision, and therefore denied review of the ALJ's decision. Because the Appeals Council noted that it had considered the details of Dr. Wilson's evaluation, the district court did not err in denying Black's request for a sentence four remand. Finally, Black abandoned his claim that the district court erred in affirming the ALJ's decision.

**AFFIRMED.**