[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11683
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-01079-CLS

JOYCE HARGRESS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 27, 2018)

Before MARCUS, FAY, and HULL, Circuit Judges.

PER CURIAM:

Joyce Hargress appeals the district court's decision affirming the denial of her application for disability insurance benefits and supplemental security income. See 42 U.S.C. §§ 405(g), 1383(c)(3).  On November 6, 2017, this Court issued a decision affirming the district court's decision.  After further review, the Court sua sponte vacates its prior decision and substitute this decision, which again affirms the district court, but adds a discussion in Section II.D about the 2015 physical capacities form completed by Dr. Jane Teschner and explains why that form does not warrant a remand to the Social Security Administration.

## I.  BACKGROUND FACTS

In May 2013, Hargress applied for disability benefits and alleged a disability onset date of January 21, 2013 due to her type II diabetes, excessive tiredness, and anxiety.  After an August 12, 2014 hearing, the Administrative Law Judge ("ALJ") determined Hargress was not disabled and denied her applications for benefits.

## A.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found that: (1) Hargress was insured through December 31, 2017 and had not engaged in substantial gainful activity since January 21, 2013; (2) Hargress had the severe impairments of morbid obesity, diabetes mellitus, hypertension, osteoarthritis of the left hip and left leg, and diffuse disc bulges of the lumbar spine resulting in mild foraminal narrowing; (3) Hargress did not have an impairment or combination of impairments that met

2

or medically equaled the severity of any of the listed impairments; (4) Hargress had the residual functional capacity ("RFC") to perform a full range of sedentary, unskilled work, but was unable to perform her past relevant work as a department manager of a retail store or battery parts assembler because they are not unskilled work; and (5) considering Hargress's age (40), high school education, work experience, and RFC, the Medical-Vocational Guidelines ("the vocational grids") mandated a finding of "not disabled." Thus, the ALJ denied Hargress's applications.

In assessing Hargress's RFC, the ALJ determined: (1) that Hargress's medically determinable impairments could reasonably be expected to cause her alleged symptoms; and (2) that her statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely credible for the reasons explained in this decision." The ALJ noted, among other things, that: (1) Hargress had never received emergency care or hospitalization for her diabetes mellitus or her musculoskeletal impairments; (2) she failed to mention musculoskeletal impairments in her disability report; (3) she described her pain as mild in some medical records, and reported that she was capable of lifting, sitting, standing, going up and down stairs, driving a car, reaching overhead, doing housework, and dressing herself; (4) based on diagnostic imaging, her degenerative joint disease and bilateral foraminal narrowing were described as mild and her disc

3

bulging was described as diffuse; (5) apart from a positive straight left-sided leg raise test, she had not consistently produced abnormal musculoskeletal or extremity examinations and had a full range of motion with no evidence of instability; and (6) the record reflected that, when compliant with medication and treatment, Hargress's diabetes mellitus was stable.

In evaluating the medical source opinions, the ALJ gave little weight to the opinion of one of Hargress's treating physician, Dr. Ochuko Odjegba, about Hargress's physical capacities.  Dr. Odjegba completed a "Physical Capacities Form," in which he indicated, inter alia, that Hargress, due to her back ache and hip pain, could sit for less than 30 minutes, stand for less than 15 minutes, and walk for less than 15 minutes at one time, that she could perform a task for only 30 minutes before needing a rest or break, and that he expected Hargress would need to lie down, sleep, or sit with her legs elevated for 6 hours in an 8-hour daytime period.  The ALJ discounted Dr. Odjegba's opinion on the form because it was inconsistent with Dr. Odjegba's other treatment records and inconsistent with the record as a whole.

## B.    Appeals Council's Decision

Hargress asked the Appeals Council to review the ALJ's decision, and submitted additional medical records, some of which post-dated the ALJ's hearing decision of February 24, 2015.  The Appeals Council denied her request for

4

review.  The Appeals Council stated that it had "looked at" the new records "from Jane Teschner, MD, dated March 2, 2015 through October 1, 2015," "Daniel Sparks, MD, dated March 2, 2015 through June 15, 2015," and "Trinity Medical Center, dated July 28, 2015," and noted that the ALJ had decided Hargress's case "through February 24, 2015."  The Appeals Council found that "[t]his new information is about a later time" and "[t]herefore, it does not affect the decision about whether you were disabled beginning on or before February 24, 2015."  The Appeals Council advised Hargress that if she wanted the agency to consider whether she was disabled after February 24, 2015, she needed to apply again and that the new information she had submitted was "available in [her] electronic file for [her] to use in [her] new claim."[1]

## II.  DISCUSSION

On appeal, Hargress argues that: (1) the ALJ improperly assigned little weight to the opinion of Dr. Odjegba; (2) the ALJ's finding at the fifth step that Hargress was not disabled was not supported by substantial evidence; (3) the ALJ failed to comply with Social Security Ruling 16-3p ("SSR 16-3p"), enacted after the ALJ's decision, in evaluating the intensity and persistence of her symptoms; and (4) the Appeals Council failed to properly consider her new evidence from

---

[1]The Appeals Council considered Hargress's other "additional evidence" submitted with her request for review and "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  On appeal, Hargress does not challenge this determination by the Appeals Council.

5

Drs. Teschner and Sparks and Trinity Medical Center.  We conclude that none of these arguments has merit.[2]

## A.    Treating Physician's Opinion

The ALJ considers many factors when weighing medical evidence, including whether an opinion is well-supported and consistent with the record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  A treating physician's medical opinion must be given "substantial or considerable weight" unless "good cause" is shown to give it less weight.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so."  Winschel, 631 F.3d at 1179 (quotation marks omitted) (alteration in original).  Good cause exists when "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Id. (quotation marks omitted).

---

[2]This Court reviews the ALJ's decision "to determine whether it is supported by substantial evidence," and the ALJ's application of legal principles de novo.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Here, substantial evidence supports the ALJ's decision to give little weight to Dr. Odjegba's opinion about Hargress's physical capacities. The ALJ's stated reason for discounting Dr. Odjegba's opinion—that it was inconsistent with his own medical records and the record as a whole—was adequate and amounts to good cause. See id.

Moreover, the ALJ's stated reason is supported by substantial evidence. As discussed more fully below, Dr. Odjegba and other medical providers indicated in their treatment notes that Hargress improved with consistent medication and physical therapy; had only mild abnormalities of her spine and joints, usually denied fatigue; was able to exercise and do other activities; and had excellent rehabilitation potential with physical therapy. Additionally, just one month before completing the "Physical Capacities Form," Dr. Odjegba saw Hargress in a follow-up visit and recommended that she walk 30 minutes every other day for weight loss, which directly contradicted his opinion on the form that Hargress could only walk for less than 15 minutes at a time.

**B.    Hargress's RFC to Perform Full Range of Unskilled Sedentary Work**

For purposes of steps four and five, the ALJ found that Hargress could perform a full range of sedentary, unskilled work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Sedentary work involves lifting no more than 10 pounds at a time, occasionally lifting and carrying small articles, sitting, and

7

occasionally walking and standing.  20 C.F.R. §§ 404.1567(a), 416.967(a).

Unskilled work "needs little or no judgment to do simple duties that can be learned

on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).

In making his RFC finding, the ALJ took into consideration Hargress's

symptoms for each of her impairments and the extent to which the symptoms could

reasonably be accepted as consistent with the objective medical evidence and other

evidence.  The ALJ limited Hargress to "work at no greater than the sedentary

exertional level" to "accommodate her musculoskeletal pain and restriction as well

as any limitation she experiences secondary to her hypertension, diabetes mellitus,

or obesity."  The ALJ also limited Hargress to unskilled work to lessen her

exposure to people or things that could exacerbate her anxiety, which the ALJ

found was a non-severe impairment.

The ALJ's finding that Hargress had the RFC to perform a full range of

sedentary, unskilled work is supported by substantial evidence.  Although Hargress

sought treatment for lower back and hip pain, doctors' treatment notes repeatedly

described Hargress's lumbar spine and joint problems as "mild," with full range of

motion and no gait disturbance.  Moreover, both her lower back and hip pain and

her diabetes improved with medication.  Indeed, Hargress's diabetes was

effectively controlled by medication and presented a problem only when she was

noncompliant with medication or reported having gone for a period of time without her medication.

Hargress was routinely prescribed physical therapy for her back and hip. Her physical therapist reported that Hargress made mostly good progress, that Hargress's pain was made better by heat, that Hargress was able to walk and squat and to exercise at home, and that Hargress had excellent rehabilitation potential. Hargress herself reported that her activities included taking care of her son, her mentally disabled brother, and her cat, working on the computer, watching television, and talking on the phone, that she had no problems caring for herself, and that she was able to do household chores, go to church, handle money, and shop. At doctor's visits, Hargress frequently denied experiencing fatigue, and none of her doctors ordered her to rest or elevate her feet for a significant portion of the day. Apart from Dr. Odjegba's Physical Capacities Form, no healthcare provider limited Hargress's activities or ordered bedrest. In fact, Dr. Odjegba instructed Hargress to walk in order to lose weight. Accordingly, substantial evidence supported the ALJ's residual functional capacity determination that Hargress could perform a full range of sedentary, unskilled work.

The ALJ concluded that although Hargress could not perform her past relevant work, Hargress was "not disabled" because a significant number of sedentary, unskilled jobs existed in the national economy that she could perform

despite her impairments.  Hargress complains that the ALJ reached this finding without consulting a vocational expert.  But, as the ALJ explained, in light of Hargress's RFC (full range of sedentary work), age (40), education (high school, English speaker), and work experience (skills not transferable), the finding of "not disabled" was directed by the vocational grids.  See 20 C.F.R. §§ 404.1569, 416.969, see also 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 200.00(a), 201.00, 201.28. Given that Hargress was able to perform a full range of sedentary work and did not have any non-exertional impairments that significantly limited her basic work skills, the ALJ permissibly relied on the vocational grids to determine Hargress's ability to adjust to other work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1239-40, 1242 (11th Cir. 2004) (explaining that an ALJ's exclusive reliance on the grids is inappropriate when the claimant cannot perform a full range of work at a given residual functional level or where the claimant has non-exertional impairments that limit basic work skills).  Thus, the ALJ was not required to consult a vocational expert to make his fifth-step finding.  See id.

## C.    SSR 16-3 p

In evaluating Hargress's subjective symptoms, the ALJ stated that it was following the "two-step process" that required him (1) to determine whether there were medically determinable physical or mental impairments that could reasonably be expected to produce the claimant's pain or other symptoms and (2) if so, to

"evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's function."  As to the second step, the ALJ explained that he "must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record."  The ALJ described claimant's statements of her symptoms, which included, <u>inter alia</u>, extreme fatigue and chronic pain measuring 10 on a scale of 1 to 10, which, along with numbness, made her unable to sit for more than ten minutes and required her to alternate between sitting and lying down throughout the day.

In applying the two-step process, the ALJ found that Hargress had medically determinable impairments that could reasonably be expected to cause the symptoms Hargress alleged, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  As discussed above, the ALJ then devoted several lengthy paragraphs to explaining why the record as a whole did not support Hargress's statements about the limiting effects of her symptoms.

On appeal, Hargress argues that her case should be remanded because the ALJ failed to evaluate the intensity, persistence, and limiting effects of her symptoms in accordance with SSR 16-3p.  SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements

11

about subjective symptoms like pain.  See SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 9, 2016); SSR 96-7p, 61 Fed. Reg. 34,483 (June 7, 1996).  The new ruling eliminated the use of the term "credibility" in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . ."  SSR 16-3p, 81 Fed. Reg. 14166, 14171.  SSR 16-3p further explains that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  Id. at 14170.

Hargress argues that the ALJ violated SSR 16-3p in evaluating her subjective symptoms and points to the ALJ's finding that Hargress's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  The problem for Hargress is that SSR 16-3p became effective March 28, 2016, a year after the ALJ's hearing decision.  See 81 Fed. Reg. 15776 (March 24, 2016) (amending the effective date of SSR 16-3p from March 16, 2016 to March 28, 2016).

12

While Hargress argues that this Court should apply SSR 16-3p retroactively, she does not cite any binding precedent to support her argument. Moreover, the U.S. Supreme Court has held that administrative rules generally are not applied retroactively. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S. Ct. 468, 471 (1988) ("Retroactivity is not favored in the law . . . . and administrative rules will not be construed to have retroactive effect unless their language requires this result."). SSR 16-3p contains no language suggesting, much less requiring, retroactive application. Indeed, SSR 16-3p explicitly states that it became effective on March 28, 2016, which "actually points the other way." See Sierra Club v. Tenn. Valley Auth., 430 F.3d 1337, 1351 (11th Cir. 2005) (declining to apply state agency rule retroactively where the rule expressly provided an effective date, explaining that "[t]here is no point in specifying an effective date if a provision is to be applied retroactively"). Thus, SSR 16-3p applies only prospectively and does not provide a basis for remand.[3]

---

[3]In any event, even if SSR 16-3p applied, the ALJ's use of the words "not entirely credible" would not warrant a remand. Read in context, the ALJ's finding did not assess Hargress's overall character or truthfulness, but rather the ALJ, consistent with the ruling's two-step process for evaluating symptoms, assessed Hargress's subjective complaints of disabling pain and fatigue and concluded that they were not consistent with the other evidence in the record. See SSR 16-3p, 81 Fed. Reg. 14166, 14170 (explaining that the ALJ will consider whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms "are consistent with" the record as a whole). Thus, regardless of which policy applies, the ALJ's finding does not amount to reversible error.

13

**D.     Appeals Council's Refusal to Consider New Evidence**

Generally, a claimant may present evidence at each stage of the administrative process.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b).  If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant.  20 C.F.R. §§ 404.970(b), 416.1470(b) (2016);[4] see also Washington v. Soc. Sec. Admin., 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is material if a reasonable possibility exists that the evidence would change the administrative result.  Washington, 806 F.3d at 1321.  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. § 404.970(b), 416.1470(b) (2016).  The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence.  Ingram, 496 F.3d at 1261 (quotation marks omitted).[5]

Here, the record does not support Hargress's claim that the Appeals Council refused to consider her new evidence—the medical records from Drs. Teschner and Sparks and from Trinity Medical Center dated after the ALJ's hearing

---

[4]Effective January 17, 2017, 20 C.F.R. §§ 404.970 and 416.1470 were amended, but Hargress does not contend these amendments apply to, or affect the outcome of, her appeal.  See 81 Fed. Reg. 90987, 90994, 90996 (Dec. 16, 2016).

[5]We review the Appeals Council's refusal to consider new evidence de novo. Washington, 806 F.3d at 1321.

14

decision—without considering whether it was chronologically relevant. The Appeals Council stated that the new records were "about a later time" than the ALJ's February 24, 2015 hearing decision and "[t]herefore" the new records did "not affect the decision about whether [Hargress was] disabled beginning on or before February 24, 2015." In short, the Appeals Council declined to consider these new medical records because they were not chronologically relevant. The Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014).

Further, we agree that the new medical records were not chronologically relevant. These medical records primarily consisted of these medical providers' progress notes for Hargress's treatment for her low back pain and diabetes between March and October 2015, including regular glucose blood tests, referrals for physical therapy, and diagnostic imaging of her lumbar spine (CT scan and MRI). Accordingly, they do not relate to the period before the ALJ's February 24, 2015 decision.

Hargress points to Washington v. Social Security Administration, in which this Court "recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." 806 F.3d at 1322. In Washington, the claimant submitted to the Appeals Council a psychologist's

15

evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. Id. at 1319-20. This Court concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. Id. at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case").

Here, however, nothing in these new medical records indicates the doctors considered Hargress's past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from Washington. Hargress did submit to the Appeals Council a physical capacities form completed on August 7, 2015 in which Dr. Teschner checked a box that indicated that Hargress's limitations dated back to January 21, 2013. The form stated that Hargress could only walk for 15 minutes at a time, could only sit for an hour, and had to recline for 4 hours a day. Nevertheless, nothing in the form or any other documents indicated that Dr. Teschner evaluated Hargress's past medical records when forming that opinion. Dr. Teschner began treating Hargress in January 2015 and thus did not treat Hargress in 2013. Therefore, the form did not relate to the period on or before the date of the ALJ's hearing decision. See id. at 1319,

16

1322-23 (recognizing that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant when, in part, a doctor reviewed the claimant's treatment records from that period when forming the opinion).

Even if the 2015 physical capacities form could be considered chronologically relevant, it was not material evidence because there is no reasonable possibility that the new evidence would change the administrative result. See 20 C.F.R. §§ 404.970(b), 416.1470(b) (2016); Washington, 806 F.3d at 1320-21. The opinion contradicted Dr. Teschner's other records, which showed that Hargress had diabetes for years that improved with medication, low back and hip pain, a normal gait, and limited complaints of fatigue or musculoskeletal complaints, with an increase in lower back pain in September and October 2015, but none reported in November 2015. Hargress had hip pain in January 2015, which was during the relevant time period, but she denied having restricted motion, she had a normal gait, and she could walk and balance.

Moreover, Dr. Teschner's 2015 physical capacities form was inconsistent with medical records created during the relevant time period and submitted to the ALJ. Although Hargress often complained of hip pain, she consistently had a normal gait, full range of motion, and mild degeneration, with a diagnosis of arthritis or chronic pain, and treatment with medication and physical therapy.

17

Although Dr. Odjegba completed the same physical capacities form and gave a similar opinion as Dr. Teschner, as discussed above, Dr. Odjegba's form was inconsistent with his own notes and with other doctor records.  Thus, the form by Dr. Teschner would not have changed the administrative result, so it was not material evidence, and the Appeals Council did not have to consider it.  See Washington, 806 F.3d at 1321.

Accordingly, the Appeals Council did not err in concluding that the new medical records from Drs. Teschner and Sparks and Trinity Medical Center were not chronologically relevant.  Because the new evidence was not chronologically relevant, the Appeals Council was not required to consider it.  Accordingly, we do not address Hargress's argument that the denial of benefits was erroneous when this new evidence is considered.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's order affirming the denial of Hargress's applications for disability insurance benefits and supplemental security income.

**AFFIRMED.**