[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11320
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-25254-KMW


OLGA PLANAS,
on behalf of A.P.,

                                                        Plaintiff-Appellant,

versus


COMMISSIONER OF SOCIAL SECURITY,

                                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 27, 2021)

Before NEWSOM, BRASHER and MARCUS, Circuit Judges.

PER CURIAM:

Olga Planas, on behalf of her son A.P., appeals in a counseled brief the district court's order granting the Commissioner's motion for summary judgment, denying Planas's motion for summary judgment, and affirming the decision of the Social Security Administration ("SSA") that ended supplemental security income ("SSI") for A.P.  That SSA decision followed the SSA's granting of a 2009 SSI claim Planas had filed on A.P.'s behalf, arising out of A.P.'s diagnoses of chronic liver disease and biliary atresia, a liver-related disease.  In early 2014, as part of A.P.'s continuing disability review, a disability officer found that A.P. was no longer disabled because his liver functioning had improved sufficiently to establish medical improvement. After a hearing, an administrative law judge ("ALJ") determined that A.P.'s disability had ended on May 1, 2014, and he had not again become disabled since that time.  The Appeals Council of the SSA denied Planas's request for review. Planas then filed a complaint in federal district court challenging the agency's decision, which the district court upheld.  On appeal, Planas argues that: (1) the ALJ applied the wrong regulatory standard in assessing the weight of the medical opinion evidence and substantial evidence did not support the ALJ's evaluation of two doctors' opinions; and (2) under Step 3 of the sequential analysis for determining whether a child's disability has ceased, the ALJ's decision that A.P.'s impairments do not currently and functionally equal a listed impairment was not supported by substantial evidence.  After careful review, we affirm.

2

When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). We review de novo the legal principles the ALJ applied but review the resulting decision to determine whether it is supported by substantial evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Under the substantial evidence standard, we look to an existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla" and is the relevant evidence a reasonable person would accept as adequate to support a conclusion. Id. (quotations omitted).

First, we are unpersuaded by Planas's arguments concerning the medical opinion evidence. For applications filed prior to March 27, 2017, as is the case here, the ALJ is required to evaluate every medical opinion received. See 20 C.F.R. § 416.927(c).[1] Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including symptoms, diagnosis and prognosis, and the claimant's physical or mental

---

[1] For claims filed on or after March 27, 2017, however, the regulations limited the definition of "medical opinion" to a statement from a medical source about what the claimant can still do despite the impairments and whether the claimant has one or more impairment-related limitations or restrictions, and no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources. See 20 C.F.R. § 416.913(a)(2) (medical opinion definition); id. § 416.920c ("[the agency] will not defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s)").

restrictions.  Id. § 416.927(a)(1).  When determining the weight to give a doctor's opinion, an ALJ considers numerous factors, including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor supported his or her opinion with evidence, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty.  Id. § 416.927(c).  A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for not giving treating doctors' opinions substantial weight.  Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018).

Under the pre-2017 regulation, an ALJ may still discount a treating doctor's opinion, when: (1) no evidence bolsters the opinion; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records.  See id.  We will not "second guess" the ALJ's determination of the weight the treating physician's opinion deserves so long as he articulates a specific justification for it.  Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).  The ALJ need not discuss every piece of evidence in her decision.  See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (holding that there is no rigid requirement that every piece of evidence be referred to in the ALJ's decision).

Here, the ALJ did not err in evaluating the relevant medical opinions, and substantial evidence supported her conclusions.  For starters, the ALJ applied the correct regulatory standard in evaluating the medical opinion evidence.  The ALJ

4

not only cited the proper regulation, but also articulated her analysis in a manner wholly consistent with the applicable regulation. So, for example, the ALJ referred to Dr. Erick Hernandez -- who treated A.P. for over nine years in connection with his liver transplant -- as a "treating source," and acknowledged the requirement to assign weight to the medical opinions presented. These provisions have been omitted from the revised regulation. Compare 20 C.F.R. § 416.927(c) with 20 C.F.R. §§ 416.913(a)(2), 416.920c.

As for Planas's claim that the ALJ did not assign weight to all the opinions as she should have under the prior regulation, Planas fails to identify any specific unweighted medical opinion. Rather, the ALJ expressly noted that Dr. Hernandez's treatment notes were given significant weight, except for his statement about chronic liver rejection, which the ALJ had good reason to discount.[2] Thus, as the record shows, the ALJ addressed all the medical opinion evidence, including what was submitted by Dr. Hernandez, see 20 C.F.R. § 416.927(c), and applied the correct standard.

Moreover, substantial evidence supports the weight the ALJ gave to Dr. Hernandez's medical opinions. The ALJ noted that -- throughout the entire

---

[2] The ALJ discounted Dr. Hernandez's letter and treatment records to the extent they lacked a function-by-function analysis of A.P.'s abilities because they provided no opinion to be weighed. Further, Dr. Hernandez's opinion about chronic liver rejection was inconsistent with his other findings that A.P.'s condition was improving, and with the opinions of the other consulting doctors, who likewise found A.P. was not impaired based on his liver conditions.

5

adjudicative period -- Dr. Hernandez saw and treated A.P. for his liver condition, and that during this lengthy history, A.P. consistently denied gastrointestinal complaints, had no physical complaints, and, generally, had normal liver enzyme levels. This, the ALJ reasonably found, was consistent with the opinions of the other treating sources and lab reports, which indicated that in 2016 A.P. had a stable appearing liver.[3]  Accordingly, the ALJ gave sufficient justification for the distinctions she made between opinions that were consistent with the record as a whole and those that were not, relying on A.P.'s own testimony, lab reports, and treating medical sources and medical consultants, and substantial evidence supported that weight. See Hunter, 808 F.3d at 823.

We also find no merit to Planas's claim that the ALJ's decision under Step 3 of the sequential analysis was not supported by substantial evidence. When evaluating whether a child, who was once found disabled, remains eligible for benefits, an ALJ must follow a three-step analysis. See 20 C.F.R. § 416.994a(b). First, the ALJ must determine whether there has been medical improvement in the child's impairment. Id. § 416.994a(b)(1). Medical improvement means "any decrease in the medical severity of [the child's] impairment(s) which was present at

---

[3] As for the record evidence not cited by the ALJ -- like the results of a magnetic resonance angiogram and ultrasound -- they indicated that A.P.'s liver was stable and further supported the ALJ's conclusion, resulting in more than a "mere scintilla" of support for the ALJ's findings. See Biestek, 139 S. Ct. at 1154.  Planas also takes issue with the ALJ's failure to discuss other pieces of evidence and procedures -- like A.P.'s liver biopsy -- but the biopsy revealed that A.P.'s liver was normal, and, regardless, the ALJ was not required to address every piece of evidence.

the time of the most recent favorable decision that [the child was] disabled." Id. § 416.994a(c). If the ALJ finds there has been medical improvement, the ALJ must then, in step two, analyze whether the child's impairment still meets or equals the severity of the listed impairment section that he met or equaled before or at the time of the disability finding. Id. § 416.994a(b)(2). If not, the ALJ proceeds to step three and determines if the child is currently disabled under the rules, considering all the impairments that the claimant has now, including any not presented or not considered in the earlier finding of disability. Id. § 416.994a(b)(3).

To functionally equal the listings, the claimant's impairment or combination thereof must result in "marked" limitations in two domains or an "extreme" limitation in one domain of functioning, including: (1) acquiring and using information; (2) attending and completing tasks; and (3) health and physical well-being. Id. § 416.926a(b), (d). In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities to that of other children of the same age without impairments. Id. § 416.926a(b).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medical determinable impairments, including any impairments that are not severe. Id. § 416.926a(a). A child has an "extreme" limitation in a domain when his impairments interfere "very seriously" with his ability to independently initiate, sustain or complete activities.

Id. § 416.926a(e)(3).  The regulations add that an "extreme" limitation also means: (1) a limitation that is "more than marked"; (2) a score on a standardized testing that is at least three standard deviations below the mean; and (3) for the domain of health and physical well-being, episodes of illness or exacerbation that result in significant, documented symptoms or signs substantially in excess of the requirement for showing a "marked" limitations.  Id.  A child has a "marked" limitation in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities.  Id. § 416.926a(e)(2).  A "marked" limitation further means: (1) a limitation that is "more than moderate" but "less than extreme"; (2) a score on standardized testing at least two, but less than three standard deviations below the mean; and (3) for the domain of health and physical wellbeing, frequent episodes of illness because of the impairment(s) or frequent exacerbations of the impairment(s).  Id.

As for the "health and physical well-being" domain, it considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.  Id. § 416.926a(l).  As for the "acquiring and using information" domain, it considers how well a child is able to acquire or learn information, and how well a child uses the information he has learned.  Id. § 416.926a(g).  An adolescent without an impairment

should continue: (1) to demonstrate in middle and high school what he learned in academic assignments; (2) to use what he has learned in daily living situations without assistance; (3) to comprehend and express both simple and complex ideas, using increasingly complex language in learning and daily living situations; and (4) to learn to apply these skills in practical ways. Id. § 416.926a(g)(2)(v).

The domain of "attending and completing tasks" considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through and finish activities, including the pace at which he performs activities and the ease of changing activities. Id. § 416.926a(h). Under the domain, the child should be able to: (1) pay attention to increasingly longer discussions; (2) maintain his concentration while reading textbooks; (3) independently plan and complete long-range academic projects; (4) organize his materials and plan his time to complete school tasks; and (5) maintain attention on a task for an extended period of time and not be unduly distracted by peers. Id. § 416.926a(h)(2)(v).

Here, substantial evidence supports the ALJ's conclusion that A.P. had less-than-marked limitations in his ability to acquire and use information and in his ability to attend and complete tasks. As for the "acquiring and using information" domain, the ALJ relied on the objective evidence that A.P. had repeated only the third grade, and that he played videogames, which required him to respond to instructions and work through problems to achieve a specific goal. The ALJ also

9

relied on the statement of A.P.'s father that A.P. was able to acquire knowledge and use it, and Planas offers no evidence in support of her conclusory assertions that there may have been a translation error in the father's statement. Further, the ALJ relied on A.P.'s own testimony that he missed school not because of medical issues but because he did not feel like going. Indeed, A.P.'s early absences may have been attributable to his medical conditions and affected his ability to succeed in classes, but no treatment records or consultant's records indicate that A.P.'s conditions impacted his cognitive abilities in a marked way. See 20 C.F.R. § 416.926a(e)(2); id. § 416.926a(g); Dyer, 395 F.3d at 1211.

As for the "attending and completing tasks" domain, A.P.'s father reported that A.P. was able to pay attention and stick with tasks, and, again, Planas did not provide any specific evidence undermining that statement. Planas argued that A.P.'s absences during the most recent school year indicated that he had a marked limitation, yet she provided no direct evidence that her son's illness "interfered seriously" with his academics. Rather, while A.P.'s poor attendance and poor grades may have been caused by his medical issues, A.P. testified that they may have been caused by the depression he suffered when he changed schools. In any event, Planas's reliance on A.P.'s absences does not overwhelm the other evidence -- including the opinions from the medical consultants -- nor does it suggest that the ALJ's conclusion was not supported by more than a "mere scintilla" of evidence.

10

See 20 C.F.R. § 416.926a(e)(2), (h); Biestek, 139 S. Ct. at 1154.  Accordingly, we affirm the ALJ's findings concerning A.P.'s limitations.

**AFFIRMED**.