[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11604

Non-Argument Calendar

_____

MARITZA IVETTE DELGADO TORRES,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cv-02059-DCI

_____

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Maritza Delgado Torres, proceeding *pro se*, appeals the district court's order affirming the Commissioner of the Social Security Administration's denial of her claim for disability insurance benefits. On appeal, she argues that the administrative law judge erred by determining that her subjective complaints of pain were not entirely consistent with other evidence in the record. She further argues that the Appeals Council erred in concluding that the additional evidence she submitted on appeal was not material to her claim. After careful review of the record, we affirm the Commissioner's denial of benefits.

## I.

For purposes of Delgado Torres's claims, the relevant period of review is between November 11, 2006, and December 31, 2009—the date she alleges she became disabled and the date she was last insured, respectively. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). However, because Delgado Torres presented—and the district court considered—treatment records created prior to the alleged disability onset date, we start from the beginning.

In 2001, Delgado Torres sustained a closed fracture in her right leg during an assault and subsequently underwent a manipulation procedure performed by Dr. James Ray. Two years later, she

informed Dr. W. Kevin Cox that she was experiencing pain in her right leg and that Dr. Ray had been treating her for her right leg injuries. Dr. Cox observed that Delgado Torres had mild swelling in her right leg and a decreased range of motion in her right ankle, but that her right lower extremity did not exhibit any other abnormalities. He noted that it was "unusual for someone to complain of persistent pain two years after a tibial shaft fracture" and explained that he had advised Delgado Torres that physical therapy would not help improve her pain. Dr. Cox did not impose any work restrictions.

In 2007, Delgado Torres visited Dr. Alex Perdomo for a consultative examination of chronic back and right leg pain. During the examination, Delgado Torres reported that, approximately five years prior, Delgado Torres fractured her right tibia and fibula "after she apparently slipped and fell." Her injury was treated with a cast, and she did not work for eight months. Delgado Torres later returned to work in the same field part-time, but was "unable to stand, walk, or sit for more than 15 to 20 minutes due to complaints of pain, mostly over the right knee and lower back area."

Dr. Perdomo observed that Delgado Torres could walk down the hallway with no assistive device and with no difficulty. She had sat comfortably during the exam and had gotten on and off the examining table with no problems. She had normal sensory, motor, and deep tendon reflexes, and had no neurological deficits. As such, Dr. Perdomo opined that Delgado Torres could stand, walk, and sit for six hours in an eight-hour workday with normal

breaks and could frequently lift and carry, but should nevertheless limit herself to lifting no more than twenty-five to thirty pounds and should avoid repetitive bending, stooping, or crouching.

Thereafter, a state agency physical consultant, Dr. Sunita Patel, reviewed Delgado Torres's medical records. Dr. Patel concluded, among other things, that Delgado Torres could occasionally lift 20 pounds and frequently lift 10 pounds; that she could stand, walk, or sit for six out of eight hours in a normal workday; and that she could occasionally climb ramps and stairs, but not ladders, ropes, or scaffolds. Describing Delgado Torres's alleged symptoms as "partially credible," Dr. Patel stated that her prior right leg fracture had healed and that Delgado Torres had no motor weaknesses or gait abnormalities.

In 2009, Delgado Torres visited David J. Fleischmann, Ph.D., for a consultative examination. During the evaluation, Delgado Torres reported independently taking care of her own hygiene, grooming, and dressing; cutting coupons, reading mail, doing small loads of laundry, and sorting recyclables; driving on short trips to church or for weekly shopping; and going out on other errands and appointments. Dr. Fleischmann indicated that Delgado Torres would have no limitation with respect to understanding, remembering, and carrying out instructions and no limitation with interacting with supervisors, co-workers, and the public. But Dr. Fleischmann also indicated that Delgado Torres would have low energy and drive to persist and initiate tasks, that she was pessimistic, and that she would avoid social and work situations.

In 2014, Delgado Torres applied for disability benefits. Her disability report identified the following medical conditions: (1) fibromyalgia; (2) cervical and thoracolumbar disorder; (3) depression; (4) obesity; and (5) joint dysfunction. After her application was denied, Delgado Torres requested and received a hearing, and subsequently testified before an ALJ.

At the hearing, Delgado Torres recounted much of her medical and work histories, including that she had broken her leg in 2001 and worked as an interviewer conducting surveys and as a substitute teacher. She inquired as to whether the ALJ had received an additional medical record and statements from her mother and neighbor. The ALJ responded that she had only received one letter from Delgado Torres's mother, dated June 20, 2017, but that the other documents would be scanned and added to Delgado Torres's file following the hearing.

A vocational expert testified that a hypothetical person of Delgado Torres's health would be unable to return to Delgado Torres's past relevant work. However, the expert explained that the same hypothetical person could work as a price marker, cashier, or a non-postal mailroom clerk. The ALJ asked the expert whether, if the exertional level was reduced to "sedentary" but the other factors remained the same, there were jobs the hypothetical person could perform. The expert responded that the hypothetical person could work as a ticket checker, a document preparer, or a polisher of eyeglass frames.

On November 8, 2017, the ALJ issued her written decision, finding that Delgado Torres was not disabled during the relevant period, November 11, 2006, through December 31, 2009.

At step one of the sequential evaluation process, the ALJ found that Delgado Torres had not worked since the alleged onset date.

At step two, the ALJ found that Delgado Torres had the following severe impairments: "status post right leg fracture," fibromyalgia, depressive disorder, and PTSD.

At step three, the ALJ concluded that none of Delgado Torres's impairments met the severity threshold of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the medical evidence did not support such a finding. Specifically, the ALJ found that Delgado Torres had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. In support, the ALJ cited to Delgado Torres's function report, in which she indicated that she was able to drive, shop, cook simple meals, complete certain household chores, and manage her finances. The ALJ further relied on the results of the psychological consultative examination, which revealed that Delgado Torres had good recall, logical and relevant speech and thinking capabilities, and the ability to understand and complete standardized psychological tests.

At step four, the ALJ concluded that, during the relevant time period, Delgado Torres had the residual functional capacity to perform light work, but that she could "never climb ladders, ropes, or scaffolds," could "occasionally climb ramps or stairs, as well as occasionally balance, stoop, kneel, crouch, or crawl," and "could perform simple, routine tasks, with occasional changes in a routine work setting." The ALJ detailed Delgado Torres's allegations regarding her conditions and their effects on her daily life, which Delgado Torres had explained in various documents, including pain questionnaires, function reports, and disability reports.

Regarding Delgado Torres's subjective testimony of pain, the ALJ determined that it was "not entirely convincing" in "light of the record as a whole." For example, the psychological consultative examination obtained during the period at issue showed that Delgado Torres admitted to a normal range of daily activities. She was able to independently take care of "her own hygiene, grooming and dressing," "drive on short trips wherever she needs," go out on "errands and appointments," and could cut coupons, read mail, and sort recyclables. Delgado Torres further indicated on the function report that she was able to drive, prepare her own meals, and perform routine household chores. Accordingly, the ALJ concluded "that the claimant's testimony is consistent only to the extent that the alleged symptoms prevent her from performing beyond the light level of exertion."

Concerning the corroborating statements submitted by Delgado Torres's mother, the ALJ indicated that she afforded them

"only some weight" because they were "provided by non-medical professional sources." The ALJ recognized that Delgado Torres had suffered a right leg fracture in 2001, but explained that objective medical evidence indicated that she "had recovered well from her original fracture" before the period relevant to her claim. The ALJ also noted that, while Delgado Torres claimed she was unable to stand or walk for more than 20 minutes, squat, or stand on her right toes, the consultative physical examiner had "observed that [she] had [a] full range of motion of the lower extremities," had a normal range of motion and strength in all other major joints and muscle groups, and did not report experiencing generalized pain.

At step five, the ALJ considered the vocational expert's testimony and Delgado Torres's age, residual functional capacity, education, and transferrable work skills, and determined that Delgado Torres could have worked as a price marker, cashier, or non-postal mailroom clerk.

The ALJ concluded that Delgado Torres "live[d] a full life, despite her allegations to the contrary," and was not disabled. She stated that she was giving "great weight" to the psychological consultative examiner's overall opinion and "significant weight" to the physical consultant's opinion, as both were consistent with the other evidence in the record. Crediting the vocational expert's testimony, the ALJ then determined that Delgado Torres was unable to perform any of her past relevant work.

Delgado Torres sought review of the ALJ's decision and submitted the following additional evidence to the Appeals Council:

(1) a statement from her neighbor indicating that Delgado Torres generally remained in her house, was not working in 2007 and 2008, and had been advised to go to a free clinic in 2009; (2) a statement from Delgado Torres's mother dated June 20, 2017, describing Delgado Torres's conditions; (3) a statement from Delgado Torres's mother dated May 30, 2014, stating that Delgado Torres could not work and that her mother paid her bills; (4) a statement from Delgado Torres's mother dated July 26, 2017, describing Delgado Torres's medical treatments; (5) a radiology report of a cervical magnetic resonance imaging test Delgado Torres underwent on May 3, 2013; and (6) medical bills and records related to treatment Delgado Torres received from 2001 to 2003 for her right leg fracture. The additional medical records indicated that Delgado Torres visited Dr. Ray approximately 14 times between December 2001 and March 2003 and that the fracture was healing normally. The last record, which was dated March 3, 2013, stated that the fracture had "been well healed."

The Appeals Council denied Delgado Torres's request for review. With respect to the statements from Delgado Torres's mother and neighbor, and the medical and billing records from 2001 to 2003, the Appeals Council stated that the evidence did not demonstrate "a reasonable probability that it would change the outcome of the decision." It also concluded that the radiology report did not affect the decision regarding whether Delgado Torres was disabled during the relevant period because the case was decided through December 31, 2009, and the record documented a test performed in 2013.

Delgado Torres filed a *pro se* complaint in the district court. She asserted that the ALJ "failed to acknowledge pain as a severe impairment" and contended that the Appeals Council "did not adequately evaluate[] the new evidence" that she submitted. The Commissioner responded that the ALJ's decision was supported by substantial evidence and that the Appeals Council properly concluded that the additional evidence Delgado Torres submitted was not relevant. The magistrate judge issued a final order affirming the Commissioner's decision.

Delgado Torres appealed.

## II.

When an administrative law judge denies an application for disability insurance benefits and the Appeals Council denies review, we review the administrative law judge's decision as the final decision of the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal marks omitted).

## III.

Delgado Torres makes two arguments on appeal. First, she argues that the administrative law judge erred by determining that

her subjective complaints of pain were not entirely consistent with the record. Second, she argues that the Appeals Council erred in concluding that the additional evidence she submitted on appeal—statements from Delgado Torres's mother and neighbor, medical invoices from Dr. Ray, and a report of an MRI Delgado Torres underwent in 2013—was not material to her claim.

We begin with Delgado Torres's first argument. In her view, the ALJ failed "to acknowledge pain as a severe impairment" and to give "serious consideration" to her subjective complaints of pain. Furthermore, Delgado Torres contends that subjective complaints of pain that are accompanied by supporting medical evidence can establish a *prima facie* case of entitlement to disability benefits. We are unpersuaded.

As an initial matter, pain itself is generally not categorized as a severe impairment—instead, it is categorized as a symptom. *See* 20 C.F.R. § 404.1529; *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1316 (11th Cir. 2024) (categorizing pain as a symptom, not an impairment); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (same); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (same).

In any event, in her decision, the ALJ gave serious consideration to Delgado Torres's allegations of pain—citing her pain questionnaires, function reports, and the testimony she had provided at the hearing regarding her physical and mental symptoms. As part of that serious consideration, the ALJ recognized that Delgado Torres nevertheless engaged in "a normal range of daily activities" and was able to drive, prepare meals, complete personal care tasks,

run errands, attend appointments, mow the lawn, and perform household chores, among other things. The ALJ further noted that medical records and the reports of various providers reflected that Delgado Torres had recovered from her original fracture and had adequate physical and mental abilities, despite her allegations to the contrary. Thus, to the extent that the ALJ discredited Delgado Torres's subjective complaints, she "clearly 'articulate[d] adequate and explicit reasons'" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Delgado Torres's second argument—that the Appeals Council erred in concluding that the additional evidence she submitted was not material to her claim—is equally unavailing.

Claimants are generally permitted to present new evidence at each stage of the administrative process, and the Appeals Council is required to consider such evidence if it is material and chronologically relevant. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308–09 (11th Cir. 2018). New evidence is material if there is a "reasonable possibility" that it would "change the administrative result." *Id.* at 1309. Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's hearing decision. *Id.* While the Appeals Council must adequately evaluate new evidence and "apply the correct legal standards in performing its duties," it is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's

20-11604                 Opinion of the Court                 13

decision." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

Here, the ALJ explained that the objective medical evidence predating the relevant period indicated that Delgado Torres "had recovered well from her original fracture." The additional pre-2006 invoices and records Delgado Torres submitted do nothing to undermine that conclusion—they merely recount information that the ALJ already possessed, such as the fact that Delgado Torres was treated by Dr. Ray. Similarly, the cervical MRI, which was dated May 3, 2013, occurred years after the period at issue and did not indicate anything pertinent to the period at issue.

As for the additional statements provided by Delgado Torres's mother and neighbor, they did not contain information that was meaningfully different from what Delgado Torres testified to at the hearing or included in the various documents she submitted to the agency. Moreover, the ALJ considered certain statements prepared by Delgado Torres's mother and afforded them "only some weight" because they were not "provided by non-medical professional sources." We cannot say there was a "reasonable possibility" that the additional statements from Delgado Torres's mother and neighbor would have changed the administrative result. *See Hargress*, 883 F.3d at 1309.

## IV.

We **AFFIRM** the Commissioner's denial of benefits.