**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13759

Non-Argument Calendar

————————————

CHRISTINA ANN REESE,

*Plaintiff-Appellant,*

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:23-cv-00181-SGC

————————————

Before NEWSOM, GRANT, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Christina Reese appeals from the district court's affirmance of the Appeals Council, which denied her claim for supplemental security income (SSI). First, Reese argues that the

Appeals Council erred when it declined review of the Administrative Law Judge's (ALJ) decision despite Reese submitting additional evidence that is chronologically relevant. Second, Reese argues that the ALJ improperly discounted two state agency consultants' mental impairment limitations in the residual functional capacity (RFC) assessment after finding their opinions moderately persuasive. After careful review, we affirm.

## I.

Reese applied for SSI on October 27, 2020, alleging an onset date of February 13, 2007 for the following disabilities: high blood pressure, irregular heartbeat, diabetes, carpal tunnel syndrome, tendonitis of the feet and legs, back problems, and migraines. Disability examiners denied Reese's application initially and on reconsideration. Reese then requested and received a hearing before an ALJ, who found her not disabled.

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity, she is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activities, she does not have a severe impairment and is not disabled. *Id.* § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or

---

[1] If the ALJ determines that the claimant is or is not disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520 (a)(4).

equal an impairment listed in a provided appendix (the Listings), she is disabled. *Id.* § 404.1520(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not meet or equal an impairment in the Listings, the ALJ must assess the claimant's Residual Functional Capacity (RFC) and use it to determine whether the claimant can still preform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do this type of work, she is not disabled. *Id.* Finally, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing other work that exists in the national economy, she is not disabled. *Id.* § 404.1520(a)(4)(v).

Here, the ALJ found that Reese had not engaged in substantial gainful activity since October 27, 2020, the date of her application. Second, the ALJ found that Reese has the following severe impairments: obesity, depression, anxiety disorder, carpal tunnel syndrome, migraines, and chronic obstructive pulmonary disorder. Third, the ALJ found that Reese does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. Fourth, the ALJ determined that Reese has the RFC to perform a limited range of light work and could therefore continue to perform her past relevant work as a cleaner and home attendant. Fifth, the ALJ determined that there were a significant number of national jobs that Reese could perform, including a mail clerk, caller, and marker.

The ALJ ultimately affirmed the denial of SSI on March 28, 2022, finding that Reese was not disabled. Reese then requested the

Appeals Council review the ALJ's decision. On August 11, 2022, Reese obtained a psychological evaluation from Dr. June Nichols, a clinical psychologist. She submitted the evaluation along with a Mental Health Source Statement to the Appeals Council on September 19, 2022. The Appeals Council ultimately declined to review the ALJ's decision. They noted that the additional evidence Reese submitted, including Dr. Nichols's opinion, did not relate to the relevant period of disability. This decision became the final decision of the Commissioner of the Social Security Administration's (Commissioner).

Reese appealed to the district court, which affirmed the Appeals Council's refusal to consider new evidence and the ALJ's denial of Reese's SSI. Reese timely appealed.

## II.

Reese first argues that the Appeals Council erred in denying review of the ALJ's decision because Dr. Nichols's opinion is chronologically relevant.

With a few exceptions, a claimant generally may present evidence at every stage of the administrative process. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam). "If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant." *Id.* at 1309. Evidence is material if there is a reasonable possibility "that the evidence would change the administrative result," and it "is chronologically relevant if it relates to the

period on or before the date of the ALJ's hearing decision." *Id.* (citation modified); 20 C.F.R. § 416.1470(a)(5).

"[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our *de novo* review." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (per curiam) (quotation marks omitted). And "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* As part of our de novo review, we may consider factors that the Appeals Council did not when it refused to consider new evidence.[2]

In her report, Dr. Nichols summarized Reese's mental health treatment records from 2009 through 2022 and recounted her family mental health history and symptoms. During the exam, Dr. Nichols observed different abnormalities, including dysthymic mood, anxious affect, and thought content positive for both auditory and visual hallucinations. From this exam, Dr. Nichols

---

[2] Reese argues that this conclusion would conflict with *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), which held that reviewing courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *Id.* at 196. However, under the prior precedent rule, this court is bound by our later holdings in *Washington* and *Hargress*. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *see also United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016) (The prior panel precedent rule has no "exception carved out for overlooked or misinterpreted Supreme Court precedent."). Previously, we considered both chronological relevance and materiality when the Appeals Council only considered chronological relevance. *Washington*, 806 F.3d at 1321; *Hargress*, 883 F.3d at 1310.

concluded that Reese suffered from various mental health disor-
ders.[3] Dr. Nichols then filled out a form estimating, among other
things, that Reese would be off task 30% of the time during an
eight-hour day and would miss over ten days out of thirty due to
psychological symptoms. Dr. Nichols circled an answer indicating
these impairments existed on October 27, 2020, the date of her SSI
application.

The only indications of chronological relevance are Dr.
Nichols's review of medical records that predated the ALJ's deci-
sion, and that she circled the answer on the form that the impair-
ments existed on October 27, 2020. But none of Reese's symptoms
were present in any of the previous medical records before the ALJ.
Instead, Dr. Nichols's report demonstrates that Reese's mental im-
pairments progressively worsened after the ALJ's decision, show-
ing that the records were "about a later time." *Hargress*, 883 F.3d at
1309. Because there is evidence of mental decline after the ALJ's
decision, the Appeals Council was not required to consider Dr.
Nichols's opinion because it was not chronologically relevant to
the time at issue.[4]

---

[3] These included major depressive disorder, recurrent and severe with psy-
chotic features, generalized anxiety disorder, panic disorder, specific learning
disorders with impairments in reading and written expression, and borderline
intellectual functioning.

[4] Even assuming that Dr. Nichols's opinion was chronologically relevant, the
opinion is likely not material. For evidence to be material, there must be "a
reasonable possibility . . . that the evidence would change the administrative
result." *Hargress*, 883 F.3d at 1309. Here, it is unlikely that Dr. Nichols's

Accordingly, the Appeals Council did not err in declining to review Dr. Nichols's opinion postdating the ALJ's decision.

## III.

Reese also argues that when the ALJ adopted the opinions of two agency consultants—Dr. Virginia Bare and Dr. Robert Estock—he erroneously excluded limitations from the opinions without explanation. Specifically, the limitations found by both doctors as to understanding and remembering simple instructions and an absenteeism rate of one to two days per month.

We review the ALJ's decision as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review de novo the legal principles the Commissioner applied. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024). The Commissioner's factual findings must be supported by substantial evidence, meaning "more than a scintilla" and "such relevant evidence as a reasonable person would accept

---

opinion would change the administrative result because it is unsupported by, and at times directly contradicts, other portions of the record. *See Washington*, 806 F.3d at 1322 (considering whether the new evidence was "wholly inconsistent" with the evidence considered by the ALJ when determining materiality). Dr. Nichols's determinations that Reese suffered from severe depression and experienced symptoms related to that diagnosis find no support in the other medical records supplied to the ALJ. In fact, some of the medical reports stand in direct conflict with Dr. Nichols's conclusions. For example, medical records reported that Reese's mood was euthymic, she had no audio or visual hallucinations, no suicidal thoughts, and her memory was within normal limit.

as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "We will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). "[W]e may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Id.*

The ALJ has a duty to develop a full and fair record. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (quotation marks omitted). "So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter*, 5 F.4th at 1326.

In formulating the RFC, the ALJ must account for all relevant medical evidence and other evidence. *Buckwalter*, 5 F.4th at 1320; 20 C.F.R. § 416.945(a)(1). The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter*, 5 F.4th at 1320–21. The "most important" factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). In the decision, the ALJ must explain how it considered those two factors. *Id.*

Here, the ALJ properly assessed the medical opinions and findings of the two doctors.[5] First, he addressed supportability, finding that both doctors derived adequate support for their contentions from the medical record. Next, he addressed consistency, focusing on the limitations Reese contends were omitted. The ALJ found that the minor discrepancies from the opinions conflicted with other parts of the record. *See Hargress*, 883 F.3d at 1306 (finding that the ALJ's reason for discounting the doctor's opinion for inconsistency with other medical records was appropriate).

In particular, the ALJ found that Reese's mental health treatment in December 2021 indicated mild depressive symptoms, which occurred after Dr. Bare and Dr. Estock issued their opinion in September 2021. The ALJ also discussed evidence that Reese's condition was improving at a follow-up visit in 2022, weakening the relevance of the doctor's earlier opinions. At that visit, Reese was found to only have "mild" limitations in understanding, remembering, or applying information. These conflict with Dr. Bare and Dr. Estock's opinions that Reese had "moderate" limitations in the same area.

Lastly, the ALJ did not err by failing to expressly address Dr. Estock's opinion of Reese's absenteeism rate. The ALJ noted that

---

[5] Reese argues that the ALJ violated regulation 20 C.F.R. § 416.920c(b)(1) by grouping his discussion of the two doctor's opinions together into a single paragraph. However, the regulation cited only describes the procedure for discussing multiple opinions from a single physician. Reese points to no other regulation preventing this combined format of discussion.

the opinion was "moderately persuasive" and "generally consistent and supported by the evidence." The ALJ is not required to cite every individual piece of evidence. *Buckwalter*, 5 F.4th at 1326. The ALJ expressly stated that he considered the record and medical opinions in their entirety, satisfying his duty to develop a full and fair record.

Based on the record as a whole, substantial evidence supports the ALJ's rationale for discounting part of Dr. Bare's and Dr. Estock's opinions and concluding that Reese had the RFC to perform light work subject to specific limitations.

**AFFIRMED.**