[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10999

_____

MELISSA ANN SPURGEON,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00782-NAD

_____

Before ROSENBAUM, NEWSOM, and TJOFLAT, Circuit Judges.

PER CURIAM:

Melissa Ann Spurgeon appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability-insurance benefits.  First, she argues that the administrative law judge ("ALJ") failed to give the opinions of her treating physician special weight under the "treating-physician rule."  Though Spurgeon admits that 20 C.F.R. § 404.1520c (2017) did away with the treating-physician rule, she asserts that the regulation did so only in derogation of the Social Security Act, which itself imposes the treating-physician rule in 42 U.S.C. § 423(d)(5)(B).  Second, she contends that the Appeals Council erred when it failed to consider the opinion of Dr. June Nichols, which Spurgeon submitted to the Appeals Council as new evidence, without explaining why it declined to do so.

After careful consideration, we affirm the district court's decision.  We have already held that 20 C.F.R. § 404.1520c (2017) abrogated the treating-physician rule, and 42 U.S.C. § 423(d)(5)(B) does not independently require such a rule.  *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892, 894, 897–98 (11th Cir. 2022).  So under our precedent, the district court did not err in declining to give special weight to the opinions of Spurgeon's treating physician.

And even though the Appeals Council did not mention the opinion of Dr. Nichols when it denied review, we cannot remand the case to the Commissioner because the opinion was immaterial.

So we affirm.

## I.    BACKGROUND[1]

Spurgeon applied for disability-insurance benefits on February 21, 2018, at age 44.  She previously worked as a medical assistant.  When she applied for benefits, Spurgeon alleged disability with an onset date of February 12, 2016, based on orthostatic hypotension, dysautonomia, palpitations, hypertension, paroxysmal supraventricular tachycardia, anxiety, mitral valve prolapse, obesity, blood pooling in lower extremities, and brain fog.

Medical records from the relevant timeframe show that Spurgeon was diagnosed with several health conditions, including dysautonomia, hypertension, tachycardia, anxiety, obesity, neuropathy, and leg pain, among others.  They also show that many doctors, across various visits, found Spurgeon to be alert, cooperative, and oriented, with intact cognitive function, normal mood, and normal affect.  Medical records from various doctors also found Spurgeon to have no physically remarkable symptoms.  And some of Spurgeon's symptoms, including her anxiety, improved with treatment and medications.

Spurgeon filed several medical opinions in the administrative record.  The ALJ found two of these opinions to be persuasive

---

[1] The Court reviewed the entire record, including information in the medical records and opinions that may not be mentioned in this section.  Here, we highlight the records, conditions, and opinions essential to understanding our ruling and reasoning.

and consistent with the medical records.  First, Dr. Robert Estock concluded Spurgeon could concentrate and attend to simple tasks for two hours.  Dr. Estock also said Spurgeon could tolerate ordinary work pressures, but she should avoid excessive workloads, quick decision making, rapid changes, and multiple demands.  Second, Dr. Jerry Bynum opined that Spurgeon's ability to understand instructions was not impaired, but her ability to carry them out was mildly impaired because of mental-health symptoms.  He found that she had a moderate impairment in her ability to respond appropriately to supervision, coworkers, and work pressures, a mild impairment in communications, and a moderate social impairment.  He also concluded she had no cognitive impairment and could manage her own benefits.

On the other hand, the ALJ found the opinions of Dr. Barton Perry, one of Spurgeon's treating physicians, to be unpersuasive because they were inconsistent with other medical records.  As to her psychological condition, in relevant part, Dr. Perry opined that Spurgeon could understand and carry out short and simple instructions, but she could not maintain concentration for two hours, adhere to a schedule, adjust to routine work changes, interact with supervisors or coworkers, or maintain socially appropriate behavior.  He expected that she would be off task for eighty percent of the workday and miss fifteen days of work in a thirty-day period because of psychological symptoms.  In a separate opinion he issued on the same day, concerning Spurgeon's physical condition, Dr. Perry opined that Spurgeon could sit or stand for only one hour

at a time, would be off task for most of the day, and was expected to miss ten days of work in a thirty-day period.

The ALJ found Dr. Perry's opinions to be unpersuasive because they "provide no nexus between the conditions he cites and the limitations." The ALJ also pointed to medical records spanning the relevant years that were inconsistent with Dr. Perry's opinions. For example, the ALJ cited medical records that did not indicate the physical restrictions in Dr. Perry's opinions. He also highlighted records showing that Spurgeon's generalized anxiety disorder and certain physical symptoms were controlled through medication. And he relied on medical records that, as noted above, showed Spurgeon to be alert, oriented, and negative for confusion, behavior problems, and mood swings.

At the hearing before the ALJ, Spurgeon testified that she had several serious health issues, had trouble standing for more than ten minutes, could not focus on a two-hour movie, and needed to elevate her legs for four hours a day. A vocational expert then testified that, though Spurgeon would be unable to perform any of her past work, a person with the limitations she was found to have could perform other jobs that existed in significant numbers in the national economy. The expert also testified that if Spurgeon were off task more than five percent of the workday or missed more than one day of work a month, she would be unable to maintain a job.

After the hearing, the administrative law judge denied Spurgeon's application. In the opinion, the ALJ went through the

five-step process required to determine if a claimant qualifies for disability benefits under 20 C.F.R. § 404.1520(a)(4)(i)–(v). The ALJ ultimately denied disability-insurance benefits because, even though Spurgeon could not perform any of her past relevant work, he concluded that jobs in the national economy that Spurgeon could perform existed in significant numbers.

Spurgeon sought review from the Appeals Council. She requested sixty days to submit additional evidence. The Appeals Council agreed not to act for twenty-five days, allowing her to submit new evidence until February 5, 2020. A day before the deadline, on February 4, Spurgeon submitted one additional medical opinion.

However, Spurgeon did not submit a new medical opinion from Dr. June Nichols ("the Nichols Opinion") until May 22, more than three months past the deadline and only four days before the Appeals Council issued its decision. Dr. Nichols opined that Spurgeon likely had difficulty concentrating for two hours, interacting with supervisors and coworkers, and maintaining socially appropriate behaviors. The opinion concluded that Spurgeon would have difficulty following a schedule, was likely unable to adjust well to work changes, would likely be off task forty-to-fifty percent of the time, and would likely miss fifteen workdays in a thirty-day period. Dr. Nichols stated these limitations "would have existed prior to 2/12/16."

Four days after Spurgeon submitted the Nichols Opinion, the Appeals Council denied the request to review the ALJ decision.

As to the new opinion that Spurgeon submitted *before* the Appeals Council's deadline for new evidence, the Appeals Council found it was not chronologically relevant and declined to consider it. As to the Nichols Opinion, which Spurgeon submitted *after* the Appeals Council's deadline, the Appeals Council did not mention it at all in the denial. The decision included a notice of Spurgeon's right to appeal the denial in federal court.

Spurgeon filed for review of the denial of benefits in the district court. She also filed a "Motion To Remand Pursuant To Sentences 4 & 6" of 42 U.S.C. § 405(g). The district court affirmed the denial of disability-insurance benefits and denied the motion to remand. Spurgeon timely filed this appeal.

## II. DISCUSSION

We review de novo an ALJ's application of law. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). We also review de novo the Appeals Council's refusal to consider new evidence. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021).

First, we address whether Spurgeon forfeited her arguments supporting her position that the treating-physician rule required the ALJ to give Dr. Perry's opinions special weight. We conclude she did not. So we then consider the merits of these arguments and find that the ALJ did not owe Dr. Perry's opinions special weight.

Finally, we assess whether the Appeals Council erred in declining to consider the Nichols Opinion. We conclude it did not.

### A. *Spurgeon did not forfeit her treating-physician-rule arguments.*

On appeal, the arguments Spurgeon raises about the treating-physician rule differ from those she relied on in the district court. So before discussing the merits, we must decide whether Spurgeon forfeited these arguments. We hold that she did not.

Generally, we don't review issues raised for the first time on appeal. *In re Home Depot Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019). But we've observed that "there is a difference between raising new issues and making new arguments on appeal." *Id.* And if an issue is "properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below." *Id.* (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). In *Home Depot*, for instance, Home Depot changed its argument on appeal, relying on a different line of precedents than it did in the district court. *Id.* In fact, the party's argument on appeal actually was inconsistent with its argument in the district court. *Id.* Even so, we held that Home Depot had not waived its new argument because it was making the same bottom-line request—that is, it was raising the same issue—both at the district court and on appeal; it was just using different reasons to argue its position on the issue. *Id.*

On the other hand, in Social Security cases, we've said that, "[a]s a general principle, this court will not address an **argument**

that has not been raised in the district court." *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) (emphasis added). But in *Stewart*, the claimant filed no briefs in the district court, so he did not raise any issues in the district court. *See id.* at 115–16. Thus, he could not raise *any* arguments on appeal because they all related to forfeited issues. And in *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999), although we said that the claimant forfeited the "argument" that the ALJ should not have relied on the testimony of a vocational expert, whether the ALJ should have relied on a vocational expert was a new *issue*, not a new argument.

In short, it's clear from our opinions that even though we've sometimes inartfully employed the term "argument" instead of "issue" when we've discussed forfeiture, we've always applied the forfeiture rule to issues, not arguments.

And here, Spurgeon raises new arguments, not a new issue. Both at the district court and on appeal, Spurgeon asserted that the ALJ did not give the opinions of Dr. Perry, her treating physician, enough weight under the treating-physician rule. In the district court, she argued that our treating-physician-rule precedents survived the new Social Security regulation, so the ALJ still had to give Dr. Perry's opinion special weight. But after the district court rejected that argument and issued its opinion, we held that 20 C.F.R. § 404.1520c (2017) abrogated our earlier precedents applying the treating-physician rule. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (2022). So on appeal, Spurgeon understandably changed her arguments. Now, she contends that even if we cannot rely on prior

precedent, the Social Security Act itself requires the existence of the treating-physician rule.

At both stages of the litigation, Spurgeon's arguments go to the *issue* of whether the ALJ erred by not giving her treating physician's opinion enough weight. So we will consider Spurgeon's treating-physician-rule arguments.

### B.   *The ALJ did not err by refusing to give Spurgeon's treating physician's opinions special weight.*

Spurgeon argues that the ALJ erred by failing to give Dr. Perry's opinions "substantial weight" under the treating-physician rule. The treating-physician rule in this Circuit used to require ALJs to give substantial or considerable weight to the opinions of treating physicians unless good cause was shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In 2017, the Commissioner issued a regulation providing, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). That rule applies to all claims filed on or after March 27, 2017, including Spurgeon's claims.

Spurgeon acknowledges that the regulation purports to do away with the treating-physician rule. But she argues that the Social Security Administration cannot regulate that rule away because the Social Security Act itself imposes the treating-physician rule. She points to the statutory requirement that the Commissioner "make every reasonable effort to obtain from the

individual's treating" providers "all medical evidence" necessary to make a disability determination "prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B). In Spurgeon's view, the statutory text, structure, history, and purpose of the Social Security Act show that Congress intended to credit the opinions of treating doctors with special weight. Otherwise, Spurgeon reasons, it would not have required the Commissioner to prioritize collecting medical evidence from treating providers before evaluating evidence from consultative sources.

The problem for Spurgeon is that we already decided this issue and not in her favor. In *Harner*, we held that, while the Social Security Act instructs how medical evidence should be collected, it "does not specify how this evidence is to be weighed." 38 F.4th at 897. We also noted that we "have never held that the treating-physician rule is unambiguously required by the Act." *Id.* at 898. Ultimately, we held that 20 C.F.R. § 404.1520c (2017) is not manifestly contrary to the Social Security Act. *Id.* at 897. And we said, "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates our earlier precedents applying the treating-physician rule." *Id.* at 896.

Spurgeon argues we should ignore *Harner* for two reasons. First, the claimant in that case argued that a judicially created treating-physician rule applied *instead of* 20 C.F.R. § 404.1520c (2017), while Spurgeon challenges the validity of the regulation itself. But

our resolution of Harner's appeal necessarily resolved the issue Spurgeon raises. After all, we expressly considered whether the Social Security Act requires the treating-physician rule and whether the regulation abrogates our treating-physician-rule precedents.

Second, Spurgeon argues that we'll get a different outcome than the *Harner* panel if we ignore the deference due to administrative regulations under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). If we ignore *Chevron*, she asserts, the traditional rules of statutory interpretation will show 42 U.S.C. § 423(d)(5)(B) requires the treating-physician rule. We disagree for two reasons. First, *Chevron* remains the governing law. And second, even though *Harner* conducted a *Chevron* analysis and determined the regulation demanded deference, it specifically held that "the Act does not specify how [evidence from treating physicians] is to be weighed" and that "[w]e have never held that the treating-physician rule is unambiguously required by the Act." *Harner*, 38 F.4th at 897–98. We are bound by that holding. And that holding forecloses Spurgeon's arguments to the contrary here.

Thus, the ALJ did not err by declining to give special weight to the opinions of Spurgeon's treating physician.[2]

---

[2] The Commissioner alternatively argues that substantial evidence supported the ALJ's finding that Dr. Perry's opinion was unpersuasive. We do not consider this argument because Spurgeon did not raise this issue in either her opening or reply brief. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

### C.  Courts can remand on the basis of new evidence only when that evidence is material, and the Nichols Opinion was not material.

Finally, Spurgeon asks us to reverse the district court's decision and order the matter to be remanded to the Commissioner because the Appeals Council did not consider the Nichols Opinion and failed to explain why it did not consider the Nichols Opinion. The district court held that the Appeals Council did not have to consider the Nichols Opinion because it was "inconsistent with the record and unsupported by Dr. Nichols' contemporaneous examination," so it did not "create a reasonable probability that the outcome of the proceedings would have changed." In essence, the district court found that the Nichols Opinion was immaterial.

But Spurgeon argues on appeal that the district court cannot impose its own *post hoc* reasoning for why the Appeals Council declined to consider the Nichols Opinion. The Appeals Council never said it believed the Nichols Opinion was immaterial, even though, Spurgeon asserts, it was required to notify Spurgeon of "why it did not accept the additional evidence" under 20 C.F.R. § 404.970(c). Even so, we agree with the district court that the Nichols Opinion is not material and therefore cannot remand the matter to the Commissioner.

With few exceptions, a claimant may present evidence at every stage of the administrative process. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018). "If a claimant presents evidence after the ALJ's decision, the Appeals Council

must consider it if it is new, material, and chronologically relevant." *Id.* at 1309. Whether the evidence meets the new, material, and chronologically relevant standard is a question of law subject to this Court's de novo review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (per curiam). The Appeals Council commits reversible error when it improperly refuses to consider such evidence. *Id.*

While Spurgeon agrees we apply de novo review when the Appeals Council declines to consider new evidence, she asserts that we are barred from passing judgment on whether evidence was new, material, or chronologically relevant if the Appeals Council failed to do so first. But we think that misses the critical point in this case: the Nichols Opinion was submitted after the Appeals Council's deadline for new evidence. So we are not tasked with determining whether the Appeals Council erred in refusing to consider the new evidence. Instead, we must decide if the matter should be remanded to the Commissioner to consider that new evidence in the first instance. And in doing so, we must consider whether the evidence is material. We'll explain.

Courts can remand Social Security cases to the Commissioner only under sentence four or sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 99–102 (1991); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). "Sentence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court[.]" *Ingram*, 496 F.3d

at 1267. And here, because the Nichols Opinion was submitted to the Appeals Council more than three months past the deadline for new evidence, it was *properly* presented for the first time in the district court. This means that if Spurgeon's request for remand is to be granted, we would have to do so under sentence six. *See Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (holding it was proper to consider remand under the language of sentence six because the new evidence was submitted after the Appeals Council's deadline); *Ingram*, 496 F.3d at 1268 ("We also have held that remand under sentence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council.").

Yet sentence six permits courts to remand matters to the Commissioner "only upon a showing that *there is new evidence which is material* and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." § 405(g) (emphasis added). Put simply, then, federal courts can remand cases under sentence six only if the new evidence is material. So necessarily federal courts must be able to consider whether the new evidence is material.

Still, Spurgeon argues that the Appeals Council was required to notify her why it was declining to consider the Nichols Opinion under 20 C.F.R. § 404.970(c). And she points to the fact that the Appeals Council did not mention the Nichols Opinion in its denial

16                    Opinion of the Court                    22-10999

of the request for review and asserts that requires reversal and re-mand.

We disagree for two reasons. First, Spurgeon did not submit the Nichols Opinion until well past the deadline for new evidence. Spurgeon points to no case or authority requiring the Appeals Council to address untimely evidence. And Spurgeon's proposed rule would mean that, even if new evidence was submitted one minute before the Appeals Council's decision came out, the Appeals Council's silence on it would require remand. That cannot be right. Plus, Spurgeon neither challenges the Appeals Council's ability to impose deadlines for the submission of new evidence nor disputes that she submitted the Nichols Opinion late. So the Appeals Council's failure to mention evidence submitted after the deadline does not, in and of itself, demand reversal and remand.

Second, 20 C.F.R. § 404.970(c) states, "If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application." 20 C.F.R. § 404.970(c). The record here makes it clear that Spurgeon was aware of her right to file a new application and to seek review in the district court, which would have been her options had she disagreed with the Appeals Council's reason for not considering her late-filed

evidence.  So even assuming without deciding that the Appeals Council violated the notice requirement by staying silent on the Nichols Opinion, that error would have been, at worst, harmless error.

Given that circumstance, we consider whether the Nichols Opinion is material, even though the Appeals Council did not address the issue.  We conclude that it is not.

New evidence is material when, if accepted, a "reasonable possibility" exists that it "would change the administrative result." *Washington*, 806 F.3d at 1321 (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).  We've concluded in the past that new evidence was not material when the doctor's opinion contradicted and was inconsistent with other medical records.  *Hargress*, 883 F.3d at 1310.

Here, no reasonable possibility exists that the Nichols Opinion would change the administrative result.  Indeed, the ALJ already considered an almost-identical opinion on Spurgeon's limitations from Dr. Perry.[3]  And the Nichols Opinion suffers from the same two deficiencies that Dr. Perry's opinions did: (1) the Nichols

---

[3] Dr. Perry and Dr. Nichols listed the same limitations, except that Dr. Perry found Spurgeon would be off task for eighty percent of the workday because of mental-health issues while Dr. Nichols found she would likely be off task for forty-to-fifty percent of the workday.  Although the Nichols Opinion also diagnosed Spurgeon with obsessive-compulsive disorder, which Dr. Perry did not mention in his opinion, the Nichols Opinion does not connect that condition to any work-related limitation.

Opinion fails to provide any nexus between the conditions included in the report and the listed limitations, and (2) the Nichols Opinion's conclusions are inconsistent with other medical records the ALJ considered.

First, the Nichols Opinion does not explain the basis for the enumerated limitations. That's a problem because we can't tell whether the medical records support the limitations or are otherwise consistent with them. Spurgeon argues that the Nichols Opinion's conclusions on "absenteeism, time off task, inability to concentrate, and . . . inability to interact with coworkers and supervisors" would have changed the ALJ's opinion about Spurgeon's ability to work. For example, the Nichols Opinion concludes that Spurgeon "would likely miss 15 or more days in a 30 day period," and the vocational expert opined that consistently missing one day of work a month would make someone unable to maintain a job. But Dr. Nichols does not explain on what she based her opinion that Spurgeon would miss fifteen or more days of work. So we don't know. The same is true for each other conclusion.

Second, and exacerbating that problem, the ALJ has already found the same conclusions that are in the Nichols Opinion to be inconsistent with other medical records. The ALJ referenced medical records showing that Spurgeon was alert, oriented, negative for confusion and memory problems, managing her anxiety with medication, able to exercise, displaying an appropriate mood and intact cognitive function, and receiving unremarkable physical findings, among other findings of lack of symptoms. The ALJ

found these medical records to be inconsistent with Dr. Perry's conclusions that Spurgeon's psychological condition would cause her to be off task for significant amounts of time and miss ten days of work per month. The Nichols Opinion stated the same limitations but expected even more missed days of work per month, without any explanation of what medical evidence supported those limitations.

So as in *Hargress*, the Nichols Opinion is not material because it contradicts other medical records that the ALJ found to be persuasive without explaining its basis for doing so. As a result, we cannot remand.

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court's decision upholding the Commissioner's denial of disability-insurance benefits.

**AFFIRMED.**