[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-11281

Non-Argument Calendar

————————————————

LUTISHA MINNIS,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant- Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-80406-BER

————————————————

Before JORDAN, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Lutisha Minnis appeals the District Court's order affirming the Administrative Law Judge's ("ALJ") denial of her application for disability insurance benefits and supplemental security income. On appeal, Minnis argues that a new Social Security Ruling ("SSR") should apply retroactively to her case, the ALJ erred in not properly addressing or assessing her medical conditions, the ALJ failed to properly evaluate the medical opinions and prior administrative medical findings of record, and the ALJ erroneously evaluated her subjective allegations of symptoms and limitations. After careful review, we affirm.

## I.

Minnis filed for disability benefits in December 2020 and for supplemental security income in January 2021. At the time, she was 55 years old. Before her alleged disability onset date, February 14, 2020, Minnis worked as a certified nursing assistant ("CNA"). And before that, she worked as a billing clerk. She claimed that multiple physical impairments contributed to her inability to continue employment as a CNA: a cerebrovascular accident, morbid obesity, osteoarthritis of the knees, rheumatoid arthritis, and migraines. She also reported mental impairments of anxiety and depression.

Her applications were denied initially and upon reconsideration. She then requested and received a hearing before an ALJ. In

her written decision, the ALJ first determined that Minnis had not engaged in substantial gainful activity since the alleged onset date of her disability. The ALJ then concluded that Minnis had a number of severe impairments: morbid obesity, osteoarthritis of the knees, rheumatoid arthritis, and medial compartment arthritis of the left knee. However, the ALJ did not find that Minnis's mental impairments of anxiety and depression, singly or in combination, more than minimally limited Minnis's ability to perform basic work activities. The ALJ also determined that Minnis did not have an impairment or combination of impairments meeting the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then examined Minnis's residual functional capacity in light of her impairments. In doing so, the ALJ extensively considered Minnis's testimony as well as her medical record.

The medical record reflected issues with Minnis's knees beginning in July 2017. She complained of right knee pain to Dr. Eric Shapiro of Orthopaedic Surgery Associates, Inc., who found mild effusion and determined that Minnis's x-rays showed questionable narrowing to the medial compartment of the right knee. Yet Minnis remained capable of ambulating without an assistive device, and her upper extremities, lumbar spine, and right hip revealed no major issues. Dr. Shapiro noted Minnis's morbid obesity and diagnosed her with moderate to severe right knee arthritis and severe left knee arthritis. Minnis then received injections of Depo-Medrol, Marcaine, Cortisone, and Orthovisc for her knees.

Between January 2019 and December 2020, Minnis received treatment at Palm Beach Wellness, mostly through Physician Assistant ("PA") Erika Gottlieb. PA Gottlieb continued treating Minnis as her primary care provider through February 2022. By 2022, PA Gottlieb concluded that Minnis had rheumatoid arthritis, osteoarthritis, morbid obesity, and a history of cerebrovascular accident with mild right hemiparesis. Minnis's rheumatoid arthritis was stable on Methotrexate and Enbrel, and she ambulated normally, exhibited normal motor strength, had no bony abnormalities, and showed no edema in her extremities. But PA Gottlieb's ultimate opinion indicated that Minnis's impairments severely impeded her ability to consistently stand, walk, and sit during an 8-hour workday.

Between August 2019 and February 2022, Minnis also received treatment for complaints of bilateral knee pain and stiffness at Arthritis Associates of South Florida, mostly through Dr. Phillipe Saxe. Dr. Saxe's examination notes repeatedly recorded obesity and diminished ranges of motion in Minnis's lumbar spine, shoulder, and ankles. Minnis's knees showed crepitus and moderate synovial proliferation. Her ankles also exhibited swelling and tenderness. But Minnis indicated at some points that she "felt terrific except for some minor back pain," that her ankle pain resolved with her injections, and that Methotrexate, Enbrel, and oral steroids all helped control her arthritic issues.

In May 2021, Minnis received a physical consultative examination from Dr. Mark Rogovin of Healthcare Associates of Palm

Beach. He noted Minnis's morbid obesity, but his examination found no obvious signs of dexterity issues, joint deformity, swelling, or other abnormality. He also found no obvious abnormality with her musculoskeletal system. Yet Minnis could only ascend to and descend from the exam table very slowly while leaning on other objects for support. She could ambulate independently and without assistance, albeit with a very slow gait and very short steps due to knee pain. And the range of motion in her lumbar spine, shoulders, ankles, toes, and hips were all reduced or greatly reduced. She complained of pain in her upper and lower extremities, but the examination indicated "4+/5" strength in those extremities. And Minnis could not provide any specific restrictions in regard to sitting, standing, walking, or lying down.

Finally, in June 2022 Minnis received treatment for complaints of panic attacks, dizziness, and a long-lasting headache at Complete Neurological Care. The physical examination revealed an antalgic and wide gait, as well as an inability to heel, toe, or tandem walk. She had a decreased range of motion in her lumbar and cervical spine, but showed full muscle strength and no abnormalities in the bilateral upper and lower extremities. Her electroencephalogram was normal, and an ultrasound of the right and left carotid arteries demonstrated no issues. As to Minnis's mental state, the examination indicated she had normal attention and concentration, and there was no evidence of depression or anxiety.

At the hearing before the ALJ on August 3, 2022, Minnis testified to many of the symptoms in her medical record. She claimed

osteoarthritis in both knees, with severe pain occurring all day—notwithstanding her medication. She reported swelling, stiffness, and general instability in her knees. She claimed she could not sit or stand for a long period of time. She also claimed an inability to walk for more than 15 minutes. She reported pain from rheumatoid arthritis in her ankles, hands, wrists, shoulders, neck, back, and right hip, which persisted despite her medication. And she complained of panic attacks impeding her ability to work.

Taking all of this evidence into account—as well as the opinions of Dr. Moses Izuegbu and Dr. Larry Meade, the state agency medical consultants—the ALJ determined that Minnis had impairments that could reasonably be expected to cause her alleged symptoms. However, the ALJ did not find that the alleged intensity, persistence, and limiting effects of Minnis's symptoms were entirely consistent with the evidence in the record. Rather, the record only supported a reduced sedentary residual function capacity. Ultimately, the ALJ determined that Minnis could perform her past relevant work as a billing clerk, which only required sedentary exertion. The ALJ therefore found that Minnis was not disabled, rejecting her applications for disability benefits and supplemental security income.

Minnis requested a review of the ALJ's decision, but the Appeals Council denied her request. She then filed a complaint against the Commissioner of Social Security in the District Court for the Southern District of Florida, raising various purported issues with the administrative record and the ALJ's evaluation of the

record.  The parties cross-moved for summary judgment, and the District Court granted summary judgment for the Commissioner. Minnis timely appeals.

On appeal, Minnis raises four arguments.  First, she argues that SSR 24-2p, which constricted the look-back period for determining a claimant's "past relevant work," should retroactively apply to her case.  Second, she argues that the ALJ erred by not properly addressing or assessing her medical conditions.  Third, she argues that the ALJ failed to properly evaluate the medical opinions and prior administrative medical findings of record.  And fourth, she argues that the ALJ improperly evaluated her subjective allegations of symptoms and limitations.  We address each contention in turn.

## II.

When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)).  "This limited review precludes deciding the facts anew, making

credibility determinations, or re-weighing the evidence." *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.

Minnis first argues that SSR 24-2p, which altered how the agency evaluates "past relevant work" when determining whether an individual is disabled, should apply retroactively to her case. We disagree.

An individual claiming Social Security disability benefits must prove that he is disabled. *Moore*, 405 F.3d at 1211 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Social Security regulations outline a five-step sequential evaluation process for determining whether an applicant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The fourth step of that process requires consideration of the applicant's "past relevant work," stating that "[i]f you can still do your past relevant work, we will find that you are not disabled." *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "Past relevant work" is now defined as "work that you have done within the past five years," *id.* at § 404.1560(b)(1)(i), but the previous version of that regulation defined "past relevant work" as work performed within the past fifteen years, *id.* at § 404.1560(b)(1) (2022). Minnis argues that this change should apply to her case, requiring remand to consider whether the constricted look-back period compels a finding that she had no "past relevant work" in the previous five years.

However, the revisions to § 404.1560 do not apply to the ALJ's determination of whether Minnis was disabled.

24-11281                 Opinion of the Court                 9

Administrative rules are generally not applied retroactively. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 471 (1988)). Here, the ALJ denied Minnis's claims on August 26, 2022, nearly two years before the changed definition of "past relevant work" took effect on June 22, 2024. *See* SSR 24-2p, 89 Fed. Reg. 48479 (June 6, 2024); 89 Fed. Reg. 48138 (June 5, 2024).[1] Indeed, a footnote in SSR 24-2p provides that the constricted look-back period will only apply to applications which are either new or pending on the date it takes effect, and that "Federal courts will review [the agency's] final decisions using the rules that were in effect at the time [it] issued the decisions." SSR 24-2p n.1, 89 Fed. Reg. 48479 (June 6, 2024). And we have held in similar circumstances that where an SSR explicitly states an effective date, this points against retroactive application. *Hargress*, 883 F.3d at 1308 (citing *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1351 (11th Cir. 2005)).

Accordingly, SSR 24-2p does not apply retroactively and provide a basis for remanding Minnis's claim.

---

[1] Initially, the final rule stated that the change would take effect on June 8, 2024. 89 Fed. Reg. 27635 (Apr. 18, 2024). But the effective date of that change was deferred to June 22, 2024. 89 Fed. Reg. 48138 (June 5, 2024).

## IV.

Minnis next argues that the ALJ erred by not properly addressing or assessing her medical conditions. Specifically, she contends that the ALJ erred by not addressing her 2019 x-ray findings of end-stage bilateral knee osteoarthritis requiring bilateral knee replacements and by erroneously assessing her impairment of morbid obesity in combination with her other impairments. We disagree.

*A.*

An ALJ is required to consider each of a claimant's impairments when assessing the claimant's residual functional capacity. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019). But when we review the sufficiency of the ALJ's considerations, we are reviewing "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995)). This means that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotation marks omitted) (alterations in original).

The record indicates that the ALJ considered Minnis's 2019 x-ray findings even though she did not explicitly reference them. Dr. Saxe's medical notes from 2019 explain that Minnis's

radiographs indicated severe osteoarthritis in her knees. But this was not a novel finding, as Dr. Shapiro's medical notes from 2017 also included x-ray findings and a resulting diagnosis of osteoarthritis. Specifically, Dr. Shapiro's notes on Minnis's 2017 x-ray evaluation paralleled those of Dr. Saxe as revealing "moderate-to-severe medial compartment arthritis" in Minnis's right knee and "severe medial compartment arthritis" in her left knee, which led Dr. Shapiro to the more general "diagnosis of osteoarthritis." The ALJ summarized both doctors' notes when reviewing Minnis's medical history, specifically noting Dr. Shapiro's 2017 x-rays showing osteoarthritic conditions and then generally discussing Dr. Saxe's investigations of Minnis's continued bilateral knee pain. This indicates that the ALJ was aware of Minnis's osteoarthritic conditions, the medical findings which first revealed them, and the medical findings—including the 2019 x-rays—which reiterated them.

Moreover, the ALJ at Minnis's hearing was made aware of Minnis's osteoarthritis and her discussions with Dr. Saxe about surgical options to remediate her knee issues. Indeed, the ALJ ended Minnis's hearing by stating she would review the discussions about surgery in Dr. Saxe's medical notes because medical notes are "[t]he best evidence of what is being recommended." This further indicates that the ALJ was aware of Dr. Saxe's medical notes, which included the 2019 x-rays at issue. That the ALJ's decision did not explicitly refer to Dr. Saxe's 2019 x-rays, which reiterated an already known and explicitly referenced osteoarthritic condition, does not vitiate the ALJ's decision, as the ALJ was not required to explicitly reference every piece of evidence. *See Dyer*, 395 F.3d at 1211.

Rather, the hearing and the ALJ's decision provide substantial evidence that the ALJ was aware of the 2019 x-rays when assessing Minnis's condition as a whole.

### B.

When a claimant alleges multiple impairments that together may support a claim for social security benefits, "it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citations omitted). A combination of impairments can include a claimant's obesity. *See Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam); SSR 19-2p, 84 Fed. Reg. 22924 (May 20, 2019). And a failure to accomplish a physician's recommendation of exercise or dieting to address obesity does not preclude social security benefits for failure to follow prescribed treatment. *See McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) (per curiam); SSR 18-3p, 83 Fed. Reg. 49616 (Oct. 2, 2018).

Here, there is substantial evidence that the ALJ appropriately considered and assessed Minnis's obesity. The ALJ listed "[m]orbid obesity" as one of Minnis's severe impairments in her findings of fact and conclusions of law. She then included in her summaries of the medical notes in evidence that Minnis was noted as obese or morbidly obese by Dr. Shapiro in 2017, PA Gottlieb in 2020, Dr. Rogovin in 2021, Dr. Saxe between 2019 and 2022, and Dr. Meade in 2021. The ALJ, citing SSR 19-2p, addressed Minnis's

obesity specifically in her decision, stating that her obesity did not result in a recommendation "to limit her activity level" due to the combination of her physical impairments or due to obesity alone. Evidence of Minnis's overall physical condition, "despite the obesity," indicated Minnis could move about and perform significant daily and work-related activities at the residual functional capacity that the ALJ found. These determinations substantially evidence that the ALJ appropriately considered Minnis's impairment of obesity in combination with Minnis's other impairments when assessing Minnis's disability.

That the ALJ included in her decision a passing discussion of Dr. Saxe's recommendation that Minnis lose weight does not vitiate her conclusion. While Minnis correctly argues that a failure to lose weight according to this recommendation does not preclude her from receiving disability benefits, *see McCall*, 846 F.2d at 1319, she fails to contextualize the ALJ's statements. The ALJ included this recommendation to reify her conclusion that Minnis's obesity did not severely limit her physical capabilities. That is, Dr. Saxe's recommendation to "exercise 3 to 5 days a week for 15 to 25 minutes" in light of Minnis's overall condition evidences that Minnis's obesity did not create or contribute to a severe impediment to her basic physical capacity. And the ALJ's statement that Minnis "was noncompliant with her diet" was not a basis for finding that Minnis was not disabled. The ALJ clearly predicated this finding on the evidence as a whole indicating that Minnis could still move about and perform work-related activities. At no point did the ALJ

impermissibly state or imply that Minnis's failure to lose weight precluded a finding of disability.

## V.

Minnis next argues that the ALJ failed to properly evaluate the medical opinions and prior administrative medical findings of record. She contends that the ALJ improperly evaluated the persuasiveness of the opinions of Dr. Izuegbu, Dr. Meade, PA Gottlieb, and Dr. Saxe, both in terms of the factors the ALJ was required to consider and the hierarchy of persuasiveness of each medical opinion or prior administrative medical finding. We disagree.

For claims filed on or after March 27, 2017, an ALJ must consider submitted medical opinions using five factors: supportability; consistency; relationship with the claimant; specialization of the medical source; and "other factors." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ must articulate the consideration of the two most important factors: supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). But "there are no magic words" the ALJ must use when stating with particularity the weight given to medical opinions, and our review focuses on "whether the ALJ state[s] with at least some measure of clarity the grounds for his [or her] decision." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024) (internal quotation marks omitted) (alterations in original).

We conclude that the ALJ provided sufficient rationale for her evaluations of the prior administrative medical findings of Dr. Izuegbu and Dr. Meade. The ALJ explained that she found Dr. Meade's opinion to be more persuasive than Dr. Izuegbu's because Dr. Meade had access to Minnis's updated record, which included additional treatment at Arthritis Associates of South Florida. Although she did not use the words "supportability" or "consistency" to describe her findings, the ALJ was not required to. *Raper*, 89 F.4th at 1276 n.14. Rather, the ALJ demonstrated—with citations to the medical findings—that Dr. Meade and Dr. Izuegbu's opinions almost entirely matched and were supported by record evidence indicating that Minnis had positive rheumatoid arthritis, severe osteoarthritis of the knees, morbid obesity, bilateral crepitus in her knees, difficulty transferring, and a compensated gait. The

ALJ reinforced her evaluation of the prior administrative medical findings by indicating their consistency with the results of Minnis's consultative exam with Dr. Rogovin, which indicated Minnis had difficulty transferring, ambulated with a very slow gait, and had a reduced range of motion in the lumbar spine, cervical spine, shoulders, hips, ankles, and toes.

The ALJ thus analyzed the relative bases for Dr. Meade and Dr. Izuegbu's opinions, compared their opinions to the record evidence, and explained her rationale for the degree of persuasiveness that she assigned to each opinion.[2]  This is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support" the ALJ's conclusions.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

Similarly, the ALJ provided sufficient rationale for her evaluations of the medical opinions of PA Gottlieb and Dr. Saxe.  PA Gottlieb's opinions were determined "not very persuasive" because her own treatment notes did not support her opinions.  Her opinion did not account for Minnis's normal ambulation, normal motor strength, lack of bony abnormalities, and lack of edema.  The ALJ also highlighted PA Gottlieb's sparse documentation of her objective observations.  Moreover, the ALJ found that the opinion was

---

[2] To the extent that the ALJ did not note Dr. Meade's specialization in ophthalmology, the ALJ "may, but [is] not required to, explain" how she considered the factor of "specialization" when assessing the persuasiveness of a prior administrative medical finding.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). No error arises from the ALJ not explaining what the regulations permit her to not explain.

not consistent with Minnis's admissions that Methotrexate and Enbrel stabilized her rheumatoid arthritis.

As to Dr. Saxe, the ALJ determined his opinion was "not fully persuasive" because his own medical notes generally did not support it and because his opinion was not consistent with the record evidence. His exam formed the basis of his opinion, but the examination notes did not refer to specific ranges of motion of Minnis's knees. Nor did they record anything about Minnis's daily work activities, despite his ultimate opinion that in an 8-hour workday she was limited to standing or walking for fewer than 2 hours and to sitting for about 4 hours. The ALJ pointed to the inconsistency of Dr. Saxe's opinion with Minnis's own claims that her rheumatoid arthritis was under control and that she did not experience joint swelling and morning sickness. And because we read the ALJ's decision as a whole, *see Raper*, 89 F.4th at 1275–76, we understand the ALJ's previous discussion of other medical findings of Minnis's ability to ambulate, normal motor strength, lack of edema and atrophy, and normal muscle tone as showing inconsistency with Dr. Saxe's opinion as to Minnis's capacity to walk such that the ALJ could conclude that Dr. Saxe's opinion is "generally not supported by . . . other evidence in the record." Accordingly, substantial evidence supports the ALJ's evaluation of the persuasiveness of PA Gottlieb and Dr. Saxe's opinions.

Finally, we are not persuaded by Minnis's argument that the ALJ improperly provided an unclear "hierarchy of persuasiveness" of medical opinions and prior administrative medical findings. The

Social Security regulations provide that ALJs do not "give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s)."    20 C.F.R. §§ 404.1520c(a), 416.920c(a).  They are only required to articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings."  20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ did so here and, as previously discussed, sufficiently articulated her rationale for each conclusion.  There is no requirement for the ALJ to stratify each medical opinion according to a strict hierarchy of "quantified persuasiveness."

## VI.

Minnis finally argues that the ALJ erroneously evaluated her subjective allegations of symptoms and limitations.  She contends that the ALJ did not sufficiently explain her rationale in relation to Minnis's claimed pain and symptoms.  We disagree.

In determining whether a claimant is disabled, the ALJ considers all symptoms, including pain, "and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a).  An individual's statements shall not alone be conclusive evidence of disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a).  Rather, to establish a disability based on testimony of pain and other symptoms, a claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical

condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)). The ALJ then determines the extent to which the intensity, persistence, and limiting effects of the symptoms affect the claimant's capacity to perform work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). The findings of the ALJ as to such extent will be upheld if supported by substantial evidence. *See Foote*, 67 F.3d at 1560–61.

Here, substantial evidence supports the ALJ's conclusions as to Minnis's subjective testimony. The ALJ found that Minnis's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, she concluded that Minnis's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence in the record. The ALJ noted that Minnis testified that she used knee braces and crutches, but the ALJ discussed treatment notes from Dr. Shapiro, PA Gottlieb, Dr. Rogovin, and Dr. Saxe that all indicated Minnis could walk without an assistive device. While Minnis testified that she had difficulty carrying objects and could not lift a gallon of milk, the ALJ explained that treatment notes from Dr. Shapiro showed a muscle strength of 5/5 in her upper extremities, notes from Dr. Rogovin indicated a muscle strength of 4+/5 in her upper and lower extremities, and notes from Complete Neurological Care disclosed full muscle strength in her upper and lower extremities.

Moreover, Minnis testified that she had sharp, stabbing, burning pain all day and testified that pain from rheumatoid arthritis did not improve with medication, but the ALJ pointed to treatment notes from PA Gottlieb indicating that Minnis's rheumatoid arthritis was stable on Methotrexate and to notes from Dr. Saxe recording that oral steroids and medication improved her conditions. And even though Minnis testified that she had difficulty with basic functions such as dressing and driving more than short distances, the ALJ pointed out notes from Dr. Rogovin indicating that Minnis could not convey specific limitations with sitting, standing, walking, reaching, or lifting.

These inconsistences are "more than a scintilla" of evidence which "a reasonable person would accept as adequate to support" the ALJ's conclusion that Minnis's subjective symptoms and pain did not as severely impede her functional capacity as she alleged. *See Lewis*, 125 F.3d at 1440 (citations omitted).

## VII.

For these reasons, we affirm the District Court's judgement upholding the Commissioner's denial of disability benefits and supplemental security income.

**AFFIRMED.**